## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-KA-00325-SCT

*CRYSTAL LYNN BUFFINGTON*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 12/14/2000 |
| TRIAL JUDGE: | HON. FRANK G. VOLLOR |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | FRANK J. CAMPBELL |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | G. GILMORE MARTIN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED-06/20/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/11/2002 |


**EN BANC.**

**SMITH, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Crystal Lynn Buffington was tried in the Circuit Court of Warren County and convicted of felony child abuse in violation of Miss. Code Ann. § 97-5-39(2) (2000). She was sentenced to twenty years in the custody of the Mississippi Department of Corrections with seven years suspended and five years of post-release supervision. She appeals and raises several issues, namely (1) whether the term "temporary disfigurement" as the basis for determining what composes a "serious bodily injury" is unconstitutional; (2) whether the testimony of co-indictee, Jerry Friley, was properly allowed; and (3) whether acts of omission rather than commission can be the basis for felony child abuse.

¶2. Today, we adopt the standard first espoused by the plurality in ***Wolfe v. State***, 743 So. 2d 380 (Miss. 1999), as the appropriate definition of "serious bodily harm" in felony child abuse cases. We also hold, as a matter of first impression, that under Miss. Code Ann. § 97-5-39(2), acts of omission are also adequate to constitute felony child abuse. Thus, we affirm the judgment of the circuit court.

## FACTS

¶3. On November 2, 1999, Christina Breland went to the trailer of Buffington and her live-in boyfriend,

Jerry Lee Friley, to pick up their two year-old daughter so Buffington could plan her grandfather's funeral. Breland noticed that the little girl was very unresponsive, her clothes were too small, and she appeared to be underfed. Buffington told Breland that the child's "butt would be black and blue [] because she was stupid and hardheaded and didn't want to potty-train. . . she'd been having to whip her butt because she wouldn't potty-train." Breland testified that the child's parents neglected her, but that she had never witnessed any physical abuse.

¶4. Once Breland and the child left the trailer, they headed to Breland's mother's house. The child acted hungry, so they ate lunch on the way. The little girl spilled a drink all over herself, so upon arriving at her mother's, Breland undressed the child to clean her up. She was shocked to find that the child "was black and blue everywhere." Breland and her mother took the child to a neighbor's house and called Social Services and the police before leaving for the hospital.

¶5. The child was admitted to the emergency room at 2:25 p.m. and released approximately two hours later. She was examined by Dr. John Dawson, who "found a child that clinically appeared dehydrated, malnourished, with numerous injuries." Based on his experience, Dr. Dawson believed that the child's bruises did not happen at the same time and that her hair was missing/falling out as a result of ongoing malnutrition. He did not test for organ damage at this time. All of her bruises and abrasions caused temporary disfigurement. The doctor also stated that the injuries to the child's back, neck and face could have created a substantial risk of death, but that there was no imminent danger of death.

¶6. The child's parents, Buffington and Friley, were arrested at their home on November 2,1999. They have different versions of the events leading up to their arrests, as each blames the other for some of the abuse of the child.

### Friley's version[(1)]

¶7. The statement Friley made to the police on the night of his arrest differs somewhat from his testimony at trial. He told the police that he never used a belt to hit Brittany, only his hand. When Friley was examined at Buffington's trial, he confessed to beating his daughter with a belt. Friley originally said that he only whipped his daughter to make her stay away from wall sockets and to keep her from pushing on her bedroom window. In his statement he said that sometimes he gets mad at Buffington and takes it out the child. He said he did not realize what he is doing at these times, he goes "senile."

¶8. Friley said that he only struck the child on the hands or her bottom. He admitted to leaving bruises "on her butt and her hands," but places the blame for his daughter's other injuries on Buffington. Friley testified that Buffington whipped their little girl everyday with either a belt or a dog collar. He saw Buffington throw the child against the wall on at least two occasions. Friley witnessed his daughter being spanked after Buffington had placed her on her back and thrown her legs over her head. According to Friley, Buffington has kicked her in the head too. The reasons for these punishments were varied - the child would not eat, sleep or respond to attempts to potty-train her. Friley also claims that the child's hair loss was caused by Buffington shaving the child's head when she contracted lice.

### Buffington's version

¶9. At trial Buffington admitted to spanking her daughter, but only "just a tap" with her hand that never left a bruise that she noticed. However, in her statement to the sheriff's department, Buffington said she might

have hit the child too hard and given her a bruise or two though she did not realize it at the time. At one point Buffington stated that she "had been the only one that whupped [sic]" the child. Later, in the same statement, she asserted that Friley hit their child as well. When asked why she never called the police or Friley's probation officer when he was abusive to her or the children, Buffington said she was scared of him because he was so aggressive. However, during cross-examination, she said that sometimes when she threatened to call Friley's probation officer, he calmed down.

¶10. Buffington asserted that on the night of November 1, 1999, she was awakened by the child's crying. Friley had laid the child across the bed naked and was beating her with a belt. Buffington saids she pushed Friley off of their daughter and that when she put the child's clothes on her, "she had red marks up and down her legs, on her back, on her buttocks." She was not sure which red marks were made by Friley. The next morning when she was dressing the child, Buffington saw several bruises starting to appear.

¶11. Buffington admitted that she had seen bruises on the child prior to this time and that she and Friley have both "whupped" [sic] the child. She said that she gave the child food and fluid whenever the child asked for them as well as preparing regular meals. However, the child was going through a phase in which she would drink lots of fluids, but not eat very much. Buffington asked her daughter to eat, but could not force her to do so. Rather than attribute the child's hair loss to malnutrition, Buffington contends that Friley shaved the child's head because she had lice.

## DISCUSSION

### I. WHETHER THE USE OF THE TERM "TEMPORARY DISFIGUREMENT" AS THE SOLE BASIS FOR DETERMINING WHAT CONSTITUTES A "SERIOUS BODILY INJURY" IN A FELONY CHILD CONVICTION IS UNCONSTITUTIONALLY OVER-BROAD, ILL-DEFINED AND VAGUE, SO AS TO VIOLATE THE DUE PROCESS AND EQUAL PROTECTION CLAUSES OF THE STATE OF MISSISSIPPI AND UNITED STATES CONSTITUTIONS.

¶12. The statute which governs felony child abuse reads as follows:

Any person who shall intentionally (a) burn any child, (b) torture any child or, (c) except in self-defense or in order to prevent bodily harm to a third party, whip, strike or otherwise abuse or mutilate any child in such a manner as to cause serious bodily harm, shall be guilty of felonious abuse and/or battery of a child and, upon conviction, may be punished by imprisonment in the penitentiary for not more than twenty (20) years.

Miss. Code Ann. § 97-5-39(2) (2000).

¶13. The question which has often arisen since the adoption of this statute is what constitutes "serious bodily harm." A plurality of this Court most recently concluded that "[s]erious bodily harm," as it pertains to this section, means bodily injury that creates a substantial risk of death, or permanent or temporary disfigurement, or impairment of any bodily organ or function. *Wolfe v. State,* 743 So.2d 380, 385 (Miss. 1999). Prior to *Wolfe*, only permanent disfigurement was found sufficient to prove felony child abuse.

¶14. In the present case, Brittany's injuries consisted of bruises and abrasions. The doctor did not find any broken bones or internal damage. Buffington argues that these bruises are not enough evidence to convict her under this statute. It is clear, however, in this case that the bruises were not the result of a "well-

deserved spanking." The exhibits do not show a few superficial bruises from a spanking or two, rather they show a little girl who is covered from one end of her body to the other with bruises of *varying ages* and whose hair is falling out in patches due to malnourishment. Buffington admitted in her testimony that she "hit [the child] too hard." Other testimony describes Buffington beating her two-year old daughter with her hand, a belt and a dog collar, slapping her, kicking her in the head and throwing her against a wall.

¶15. The *Wolfe* plurality stated that the controlling statute is not so "overly broad, ill-defined and vague, so as to violate the due process and equal protection clauses of the State of Mississippi and the United States Constitutions." The child's parents knew that their actions were wrong. Buffington further complains that the trial court utilized an inappropriate standard in defining felony child abuse. She argues that *Wolfe* was a plurality decision, and thus has no precedential value. It is true that a majority of all sitting judges is required to create precedent, and therefore, it follows that a plurality vote does "not create a binding result." *Churchill v. Pearl River Basin Dev. Dist.*, 619 So.2d 900, 904 (Miss.1993) (citation omitted). We find that the definition initially set forth in *Yates v. State*, 685 So. 2d 715 (Miss. 1996), is not appropriate when considering child abuse. *Yates* is thus overruled. Rather, as we stated in *Wolfe*, the definition provided in *Yates*, while appropriate in aggravated assault cases, is "highly problematic due to the heightened level of vulnerability inherent in victims of child abuse." *Wolfe*, 743 So. 2d at 385. Today this Court holds that serious bodily harm means "bodily injury which creates a substantial risk of death, or permanent or temporary disfigurement, or impairment of any function of any bodily organ or function,"and thus, we find that the standard espoused in *Wolfe* is an appropriate definition of "serious bodily harm." *Id*. We do so noting that this is the definition provided for in § 4f of the Model Child Protection Act of the National Center on Child Abuse and Neglect (1977). *Id*. at 384.

¶16. As stated in *Wolfe*, "[i]t is important to note...that this Court's decision...should in no way be construed as an attempt to prevent parents, teachers and other custodians involved in child care from properly disciplining their children. As long as the discipline is moderate and reasonable in light of the age and condition of the child, and other surrounding circumstances, the parent or custodian will not incur criminal liability." *Id*. In other words, "temporary disfigurement" will not be met by a few bruises. In fact, the trial court gave Jury Instruction D-8A, which advised the jury that they should find Buffington not guilty if they found discipline was administered to the child and that it was done so in a moderate and reasonable fashion.

¶17. We note also that the trial court gave Jury Instruction D-7, which allowed the jury to find, if the evidence warranted, the lesser charge of contributing to the neglect or abuse of a child. The form of verdict Jury Instruction S-5 also provided for such lesser offense as a possible verdict of the jury. As observed previously, in the case at bar there was testimony that the child had been thrown against the wall more than once and hit with belts and dog collars. She was covered with bruises from head to toe, her hair was falling out in patches, and she had cuts and scratches on her face and body. This was not a case involving just a few bruises, but rather was a severe case, which clearly meets the established felony criteria.

¶18. Thus, while the standard given by the trial judge was based on the *Wolfe* plurality decision, there was no error as we find that standard to be correct. Viewing the jury instructions as a whole, the jury was adequately instructed regarding felony child abuse, the lesser offense of abuse, and a possible not guilty verdict due to moderate or reasonable discipline being administered to the child. Further, upon review of the record below, this Court finds that Buffington's actions qualify as felony child abuse under either the *Yates* or *Wolfe* standard.

**II. WHETHER THE TRIAL COURT ERRED IN FAILING TO TOTALLY DISALLOW THE TESTIMONY OF JERRY FRILEY WHO (A) WAS A CO-INDICTEE, AND (B) ADMITTED PERJURY REGARDING MATERIAL ELEMENTS OF THE STATE'S CASE. AND, IF SUCH TESTIMONY WAS PROPERLY ALLOWED, DID THE COURT DULY INSTRUCT THE JURY REGARDING THE PERJURY?**

¶19. Jerry Friley committed perjury. This is admitted by all parties involved. Buffington raises this as an issue and states that Friley's testimony should have been disallowed because of it. However, Buffington never raises this issue in her argument. She gives no facts, cases or other law to show why the judge abused his discretion by allowing the jury to consider Friley's testimony. The trial court judge is given great deference in evidentiary matters, and his findings will not be overturned by this Court unless abuse of discretion can be shown. *Eskridge v. State,* 765 So.2d 508, 510 (Miss. 2000). In light of Buffington's lack of argument on this issue and because the judge gave a limiting instruction, we affirm the trial court's holding.

¶20. As a secondary part of this issue, Buffington alleges that the circuit court failed to properly instruct the jury as to the seriousness of Friley's perjury. The trial court gave an instruction asserting that Friley had admitted his guilt, his testimony was to be "weighed with great care and caution []" and that his testimony could be completely disregarded.

¶21. While it is true that Friley was a co-indictee and that he committed perjury concerning key facts, the parties had separate trials and the key facts were relevant to his guilty plea, not Buffington's trial. As far as the allegations of Friley testifying against Buffington in order to avoid a habitual offender sentence and his need for psychiatric care, these go to the credibility of the witness. The trial court admonished the jury about the credibility of witness testimony on more than one occasion.

¶22. The trial court properly allowed the testimony of Jerry Friley and properly instructed the jury as to his admitted perjury. Buffington's claim of error is without merit.

**III. WHETHER, UNDER MISS. ANN. CODE § 97-5-39(2), ACTS OF OMISSION RATHER THAN COMMISSION ARE ADEQUATE TO FORM A PROPER BASIS FOR FELONY CHILD ABUSE.**

¶23. Buffington claims that Miss. Code Ann. § 97-5-39(1) covers all acts of commission, and that § 97-5-39(2) therefore covers only intentional actions. Thus, she claims that the trial court erred in allowing the jury to consider "allowing [the child] to become dehydrated and malnourished" to be an appropriate basis for a felony conviction under § 97-5-39(2). It is true that § 97-5-39(1) states in part that "[a]ny parent, guardian or other person who willfully commits any act or omits the performance of any duty...shall be guilty of a misdemeanor..." Miss. Code Ann. § 97-5-39(1). Thus, it clearly contemplates acts of omission that result in "the abuse and/or battering of any child, as defined in Section 43-21-105(m) of the Youth Court Law" as misdemeanor crimes. See Miss. Code Ann. § 97-5-39(1). There is, however, no language that designates all acts of omission to be misdemeanor offenses.

¶24. Miss. Code Ann. § 97-5-39 (2) states:

Any person who shall intentionally (a) burn any child, (b) torture any child or, (c) except in self-defense or in order to prevent bodily harm to a third party, whip, strike *or otherwise abuse* or

mutilate any child in such a manner as to cause serious bodily harm, shall be guilty of felonious abuse and/or battery of a child and, upon conviction, may be punished by imprisonment in the penitentiary for not more than twenty (20) years.

Miss. Code Ann. § 97-5-39(2) (2000) (emphasis added). We find that the term "otherwise abuse" is a clear indicator that the list provided is not exhaustive. Certainly, failure to feed, nourish, or provide medical care to a child can be intentional, and such a refusal may cause serious bodily harm. In fact, the very language of § 97-5-39(1) signals the Legislature's inclusion of even acts of omission as abusive behavior. This Court explained in *Faraga v. State*, 514 So. 2d 295, 303 (Miss. 1987), that the purpose of § 97-5-39 is to protect the child. Buffington's interpretation of this statute would allow one to refuse to feed a child until the brink of death, yet the omission, intentional or negligent, could be charged only as a misdemeanor. This would not serve the purpose behind the statute.

¶25. We find that the jury was properly instructed on this issue. The trial court did not err in holding that acts of omission are adequate to constitute felony child abuse. This allegation of error is without merit.

## CONCLUSION

¶26. Based on the evidence and law presented, the definition of "serious bodily injury" in felony child abuse cases is not overly broad or vague as to violate the due process and/or equal protection clauses of the State of Mississippi and the United States Constitutions. The trial judge also properly admitted the testimony of Friley along with a suitable limiting instruction. Further, the court did not err in declaring that acts of omission are sufficient to constitute felony child abuse. The judgment of the circuit court is affirmed.

¶27. **CONVICTION OF FELONIOUS CHILD ABUSE AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH SEVEN (7 )YEARS SUSPENDED AND FIVE (5) YEARS OF POST-RELEASE SUPERVISION, WITH CONDITIONS, AFFIRMED.**

> **PITTMAN, C.J., WALLER, COBB, DIAZ, EASLEY, CARLSON AND GRAVES, JJ., CONCUR. McRAE, P.J., CONCURS IN RESULT ONLY.**

1. Friley had two previous felony convictions, giving him habitual offender status. In order to avoid a life sentence, Friley gave a statement implicating Buffington in the alleged abuse of their child. Buffington was granted a severance on February 16, 2000.