980 So.2d 936 (2007)
Lydia BERRY, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2006-KA-00029-COA.
Court of Appeals of Mississippi.
June 5, 2007.
Rehearing Denied January 8, 2008.
*938 Roy Kenionne Smith, Jackson, attorney for appellant.
Office of the Attorney General by W. Glenn Watts, attorney for appellee.
Before MYERS, P.J., CHANDLER, GRIFFIS and ISHEE, JJ.
ISHEE, J., for the Court.
¶ 1. Lydia Berry was convicted of capital murder and sentenced to life in prison by the Chickasaw County Circuit Court. On September 15, 2005, the jury found Berry guilty of the murder of B.F.[1] while engaged in the commission of the felonious abuse of the child. The court denied her motion for judgment notwithstanding the verdict or in the alternative a new trial. Aggrieved, Berry appeals. Finding no error, we affirm.

FACTS
¶ 2. The child victim in this case, two-year-old B.F., was found dead on September 2, 2004, at the home of Lydia Berry and her husband, Derrick Berry. The child was found on the floor of the Berry's trailer, and she was stiff and was covered in bruises. She also had severe burns covering her ankles and feet, and there was fluid coming out of her mouth. A Chickasaw County grand jury indicted Lydia and Derrick on September 2, 2004, for capital murder as a result of felonious abuse of a child under Mississippi Code Annotated section 97-3-19(2)(f) (Rev.2006). Trial was held in the Chickasaw County Circuit Court from September 12-15, 2005.
¶ 3. B.F. was in the care of Lydia because she had agreed to keep B.F. at their home in Mississippi for two weeks. According to B.B., the mother of B.F., her *939 older daughter, K.B., was possibly being abused by her babysitter, and B.B. wanted to get B.F. away for a while so she could deal with the situation. Lydia is the sister-in-law of B.B., and she had kept B.F. on other occasions. This time, she volunteered to keep B.F. for two weeks to help out B.B. Lydia and Derrick then traveled to Kentucky to pick up B.F. from her mother's home on August 22, 2004, and brought her to their home in Mississippi. They did not bring the other daughter, K.B., to Mississippi with them because she wanted to stay in Kentucky to attend a church gathering.
¶ 4. Lydia and Derrick testified that, at the time they picked up B.F., they noticed only one bruise on her arm, and they did not notice anything wrong with the child. B.B. testified she did not notice any bruises on B.F. at the time Lydia picked her up. Upon returning to Mississippi, Lydia testified that B.F. started acting strange, shaking, crying, and soiling herself. She also said that B.F.'s hair began coming out.
¶ 5. Testimony during trial revealed that, during the time period that Lydia kept B.F., B.F. suffered severe burns around her ankles and her feet. Lydia testified that she sent B.F. to run the water for a bath and that she then heard B.F. yelling about the water being hot. Upon hearing her cries, Lydia said she went into the bathroom and turned on the cold water. At no point did Lydia or Derrick take B.F. to the hospital, but after calling her own mother, Lydia testified that she put aloe vera on the child's burns. According to Lydia, the time when B.F. was burned was the only time she had told the child to run water for herself. Every other day, Lydia said she would run the water and bathe B.F. herself. Nevertheless, even though Lydia would undress and bathe B.F. everyday, she did not recall seeing the bruises covering B.F.'s body that were recorded in the autopsy photographs.
¶ 6. Lydia denied causing the injuries to B.F., but she did admit that she spanked her on two occasions, once with her hand and once with a belt. She also said she saw B.F. fall three times. Derrick testified that Lydia was responsible for disciplining the child. He said that he never saw Lydia punish B.F. or any of the other children that would stay with them because Lydia would take them into the bedroom; however, he knew that she took them there to punish them. Derrick also stated that burns on B.F.'s feet did not seem to bother her, and she had no problem walking around after suffering the burns. While Derrick did not remember seeing most of the bruises photographed on B.F., he testified that he worked most of the day and did not have much contact with her.
¶ 7. An investigation of the Berry's trailer revealed large clumps of B.F.'s hair in the bathroom trash can and a plate of food on the floor. Lydia testified that she would feed B.F. on the floor but claimed this was because B.F. could not reach the table. B.F. also slept on the floor because Lydia said she would soil the bed at night.
¶ 8. Lydia's sister, Marlena Hutchinson, also took the stand and testified that Lydia called her during the first few days that B.F. was in her care and was concerned because B.F. was acting strange. Lydia said she called Marlena because she lived in Kentucky with B.B., and Lydia did not have a phone number to reach B.B. Lydia never managed to get in touch with B.B. until after B.F.'s feet were burned, which was about two days before B.F. died.
¶ 9. At trial, the State presented Dr. Stephen Hayne as an expert in forensic pathology. Dr. Hayne conducted the autopsy of B.F. and concluded that she had died of dehydration and severe blunt force *940 trauma. He testified that he found bruises covering B.F.'s eyes, forehead, right and left arms, chest, thighs, and back that were consistent with being hit with a fist, forearm, elbow, or foot. According to the doctor, the coloring of the bruises indicated that they were from two to seven days old. He also found abrasions on B.F.'s chest, right arm, back, and forehead. An internal investigation by the doctor revealed to him that B.F. was severely dehydrated, as evidenced by cerebral edema, swelling of the brain, and congestion of the organs. He indicated that the child's sunken eyes and dry lips also supported this conclusion.
¶10. Dr. Hayne determined that the burns on B.F.'s feet were thermal water immersion burns and were consistent with B.F. being placed in and held in hot water. According to the doctor, the lack of splash burns and the fact that the soles of B.F.'s feet were not burned indicated that someone held her in the water. It was his opinion that the burns suffered by B.F. were not accidentally caused by the child getting in the hot water, in which case there should have been splash burns and burns on the soles of her feet. In this case, the burns were located only on the upper parts of her feet and her ankles.
¶ 11. On September 15, 2005, the jury returned a verdict of guilty against Lydia for the capital murder of B.F. She was sentenced to life imprisonment, and her motion for a judgment notwithstanding the verdict or in the alternative a new trial was denied.
¶ 12. Lydia asserts the following issues on appeal:
I. Whether she received ineffective assistance of counsel
II. Whether testimony as to how the injuries occurred was outside the scope of testimony of the State's expert
III. Whether the trial court erred in refusing to grant her motion for a directed verdict, peremptory instruction, or motion for judgment notwithstanding the verdict
IV. Whether the trial court erred in refusing to grant her motion for a new trial
V. Whether the trial court should have given a jury instruction on manslaughter by culpable negligence
VI. Whether cumulative error requires reversal

ISSUES AND ANALYSIS
I. Whether Berry received ineffective assistance of counsel
¶13. To prove ineffective assistance of counsel, an appellant must show (1) that counsel's performance was deficient and (2) that the deficiency in counsel's performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Mississippi Supreme Court adopted this test in Stringer v. State, 454 So.2d 468, 476-79 (Miss. 1984). Under the first prong, counsel's conduct is presumed to fall within a wide range of reasonable professional assistance, and the appellant has the burden to overcome it. Strickland, 466 U.S. at 686, 104 S.Ct. 2052. To show the second part of the test there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Mohr v. State, 584 So.2d 426, 430 (Miss.1991). There is also a presumption that decisions made by counsel are strategic. Leatherwood v. State, 473 So.2d 964, 968-69 (Miss.1985).
¶ 14. In this point of error, Lydia alleges that defense counsel's conduct was deficient in that he failed to investigate the *941 case before trial, to call key witnesses, and to request a manslaughter instruction. It is Lydia's argument that such deficiency prejudiced her case.
¶ 15. Lydia makes her allegations without providing any evidence to support them. She claims there were witnesses available who would have come down from Kentucky to testify on her behalf at trial concerning B.B.'s treatment of the child, but she does not provide any supporting affidavits from these witnesses. Furthermore, the testimony concerning the child's health in Kentucky would not have explained the extensive bruises, abrasions, and severe burns that occurred while B.F. was in Lydia's care. Lydia and Derrick testified that the child seemed normal when they picked her up and that she had only one bruise on her.
¶ 16. Lastly, we do not find that the decision not to request a manslaughter jury instruction, and to present the jury only with the options of guilty or not guilty, was deficient. A defendant may make such a decision hoping for a not guilty verdict and to prevent a jury from finding her guilty of manslaughter in the event that the jury members cannot agree on murder. Lydia's mere allegations do not overcome the presumptions that counsel's conduct was effective and that the failure to request this instruction was strategic.
¶ 17. We find that Lydia's allegations, unsupported by evidence, have not met the burden necessary to overcome the presumption that counsel's performance was reasonable. This issue is without merit.
II. Whether testimony as to how the injuries occurred was outside the scope of testimony of the State's expert
¶ 18. A defendant's failure to raise an issue at trial creates a procedural bar that prohibits review of the issue on appeal. Glasper v. State, 914 So.2d 708, 721(¶ 30) (Miss.2005) (citing Smith v. State, 729 So.2d 1191, 1201(¶ 38) (Miss. 1998)). The rule that failure to make an objection at trial waives the issue and creates a procedural bar on appeal applies equally to a capital case. Blue v. State, 674 So.2d 1184, 1191 (Miss.1996). Furthermore, a trial court's decision admitting or excluding evidence will not be overturned absent an abuse of discretion. Yoste v. Wal-Mart Stores, Inc., 822 So.2d 935, 936(¶ 7) (Miss.2002). Rule 702 of the Mississippi Rules of Evidence provides for the admissibility of scientific knowledge that will assist a trier of fact to determine a fact in issue. Rule 704 goes on to state that opinion testimony is not inadmissible solely because it addresses an ultimate issue.
¶ 19. At trial, Dr. Hayne was qualified as an expert, and he presented his testimony without any objection from Lydia. A defendant who does not make an objection at trial does not properly preserve the issue for appeal. Smith, 729 So.2d at 1201(¶ 39). While this is sufficient to waive the issue on appeal, we take a moment to address Lydia's argument. Her contention is that it was in error to admit the testimony of Dr. Hayne regarding the cause of the burn injuries to B.F.'s feet. She believes his opinion, that these were thermal water immersion burns, was unsupported by the evidence and, therefore, inadmissible. She also argues that the State used improper hypothetical questions to elicit Dr. Hayne's opinion as to what ultimately caused B.F.'s death.
¶20. On the contrary, Dr. Hayne qualified as an expert forensic pathologist who testified to performing more than 30,000 postmortem exams. He clearly stated that "[t]he two most important tasks in the field of forensic pathology are the determination *942 of the cause [of] death and manner of death involving the death of a human being." His area of expertise was, therefore, exactly that which would be relevant to a case such as this. As is the job of a forensic pathologist, Dr. Hayne examined the victim's body and rendered an opinion as to the manner and cause of death.
¶21. Lydia confuses an allowable expert opinion with that of an improper opinion as to a legal conclusion. Dr. Hayne did not present a legal conclusion in his testimony. He merely presented the facts of which he was aware and gave his expert opinion as to what caused B.F.'s death. Quite the opposite of Lydia's argument, his testimony was relevant and helpful to allow the trier of fact to understand exactly what might have happened to B.F. This issue is procedurally barred or, alternatively, without merit.
III. Whether the trial court erred in refusing to grant the appellant's motion for a directed verdict, peremptory instruction, or motion for judgment notwithstanding the verdict
¶22. Review of a motion for a directed verdict or judgment notwithstanding the verdict tests the sufficiency of the evidence. Bush v. State, 895 So.2d 836, 843(¶ 15) (Miss.2005). The court must ask whether the evidence shows "beyond a reasonable doubt that the accused committed the act charged and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction." Id. at 843(¶ 16) (quoting Carr v. State, 208 So.2d 886, 889 (Miss.1968)). Taking the evidence in the light most favorable to the verdict, the question is whether a rational trier of fact could have found all the elements beyond a reasonable doubt. Bush, 895 So.2d at 844(¶ 16) (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).
¶ 23. Mississippi Code Annotated section 97-3-19(2)(f) (Rev.2006) provides that it is capital murder for anyone to unlawfully kill a human being "when done with or without any design to effect death, by any person engaged in the commission of the crime of felonious abuse and/or battery of a child in violation of subsection (2) of section 97-5-39." Section 97-5-39(2)(a) then provides the following:
Any person who shall intentionally (i) burn any child, (ii) torture any child or, (iii) except in self-defense or in order to prevent bodily harm to a third party, whip, strike or otherwise abuse or mutilate any child in such a manner as to cause serious bodily harm, shall be guilty of felonious abuse of a child.
¶ 24. The language "otherwise abuse" indicates that the list of actions in section 97-5-39(2)(a) that may constitute felonious abuse of a child is not exhaustive. Buffington v. State, 824 So.2d 576, 582(¶ 24) (Miss.2002). Acts of omission are therefore adequate to constitute felonious child abuse. Id. at 582(¶ 25). In a case such as the current one, failure to provide medical treatment to a child with severe injuries can be interpreted as intentional. Scarbough v. State, 893 So.2d 265, 270(¶ 10) (Miss.Ct.App.2004).
¶ 25. From the facts presented in this case, we cannot say that the evidence was insufficient to support Lydia's conviction. Taken in the light most favorable to the verdict, we see that Lydia was in charge of caring for the two-year-old B.F., who, based on all testimony, was healthy and in good condition when she went into Lydia's care. Less than two weeks later, the child is found dead, covered in bruises and abrasions, has lost a significant amount of hair, *943 and has the skin burned off of her feet and ankles.
¶ 26. Lydia argues that the State failed to put on any evidence that she intentionally caused the injuries to B.F. and maintains that all of this could have been an accident. Nevertheless, under Buffington and Scarbough, her omission in failing to at least bring the child to the hospital to care for such extensive and serious injuries was sufficient to find felonious child abuse. We cannot say that reasonable jurors could have only found Lydia not guilty. This issue is without merit.
IV. Whether the trial court erred in refusing to grant appellant's motion for a new trial
¶ 27. In reviewing a motion for a new trial, the question is whether the jury verdict is against the overwhelming weight of the evidence. Montana v. State, 822 So.2d 954, 967-68(¶ 61) (Miss.2002) (citing Dudley v. State, 719 So.2d 180, 182(¶ 8) (Miss.1998)). This court must accept as true any evidence supporting the verdict, and we may only reverse if the trial court abused its discretion in failing to grant a new trial. Montana, 822 So.2d at 967-68(¶ 61). However, a verdict that is so contrary to the overwhelming weight of the evidence that it creates an unconscionable injustice warrants reversal. Id.
¶ 28. We do not find the jury verdict to be against the overwhelming weight of the evidence; therefore, the trial court was not in error in denying Lydia's motion for a new trial. The State put on evidence of the extensive injuries suffered by B.F. and expert testimony as to how the injuries occurred. Testimony also revealed that Lydia did not seek medical attention for B.F., who was clearly in a very serious condition. At the very minimum, the jury could have found that Lydia completely failed to provide medical attention for injuries that all happened while B.F. was being cared for by Lydia.
¶ 29. As the evidence provides for the seriousness of the injuries and because Lydia's inaction could give rise to felonious child abuse under Buffington and Scarbough, the jury's verdict was supported by the weight of the evidence. This issue is without merit.
V. Whether the trial court should have given a jury instruction on manslaughter by culpable negligence
¶30. A defendant is entitled to have a court give jury instructions that present his theory of the case; however, the court may deny an instruction that misstates the law, is covered elsewhere in the instructions, or is not supported by the evidence. Ladnier v. State, 878 So.2d 926, 931(¶ 20) (Miss.2004) (citing Heidel v. State, 587 So.2d 835, 842 (Miss.1991)). The court should give instructions for a lesser included offense where the evidence is sufficient for a jury to rationally find the defendant guilty of the lesser included offense. Welch v. State, 566 So.2d 680, 684 (Miss.1990). Therefore, a jury instruction for a lesser included offense should only be given if there is an evidentiary basis to support it. Sanders v. State, 781 So.2d 114, 119(¶ 16) (Miss.2001) (citing Lee v. State, 469 So.2d 1225, 1230 (Miss.1985)).
¶31. However, the case law provides that the defendant must request an instruction on a lesser included offense. "The trial judge shall not be put in error for his failure to instruct on any point of law unless specifically requested in writing to do so." Anderson v. State, 904 So.2d 973, 977(¶ 5) (Miss.2004) (quoting Brown v. State, 751 So.2d 1155, 1160(¶ 17) (Miss.Ct. App.1999)); Newell v. State, 308 So.2d 71, 78 (Miss.1975). The failure to request a jury instruction on manslaughter is not reversible error when the instruction was *944 not requested so that the jury would be limited to a verdict of either guilty or not guilty. Lancaster v. State, 472 So.2d 363, 366 (Miss.1985). "[A] party may not complain on appeal of the failure to grant a jury instruction which was not at least in substance requested in the trial court." Mallett v. State, 606 So.2d 1092, 1095 (Miss.1992).
¶ 32. In the present case, at no point did Lydia request a jury instruction on manslaughter. Under Anderson, failure to request an instruction at trial means she may not complain on appeal about the court's failure to give such an instruction. If Lydia thought she was guilty of manslaughter and not murder, she had a responsibility to request such an instruction at trial. The failure to request a manslaughter jury instruction could just as likely have been a strategic decision in hopes of securing a not guilty verdict and to prevent the jury from finding Lydia guilty of manslaughter. We cannot say it was error for the court to not instruct the jury on manslaughter when there was no request by Lydia for such an instruction. This issue is without merit.
VI. Whether cumulative error requires reversal
¶ 33. No reversible error as to any part means there is no reversible error as to the whole. McFee v. State, 511 So.2d 130, 136 (Miss.1987). Errors in the lower court that do not require reversal standing alone may require reversal when taken cumulatively. Jenkins v. State, 607 So.2d 1171, 1183-84 (Miss.1992); Hansen v. State, 592 So.2d 114, 142 (Miss.1991); Griffin v. State, 557 So.2d 542, 553 (Miss. 1990). In any case in which a court finds harmless error or an error not sufficient in itself to warrant dismissal, the court may, on a case-by-case basis, determine whether the errors taken cumulatively warrant dismissal based on their cumulative prejudicial effect. Byrom v. State, 863 So.2d 836, 846(¶ 13) (Miss.2003).
¶ 34. This is not a case in which cumulative error results from harmless errors or those errors insufficient to warrant reversal. We do not find any errors in the issues presented to us by Lydia; therefore, there are no cumulative errors sufficient to warrant reversal. This issue is without merit.
¶ 35. THE JUDGMENT OF THE CHICKASAW COUNTY CIRCUIT COURT OF CONVICTION OF CAPITAL MURDER AND SENTENCE TO LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] We will use initials to protect the identity of the victim's family.