CARLTON, J.,
for the Court:
¶ 1. A jury convicted Amy Lenard in the Panola County Circuit Court on a charge of felony child deprivation. She was sentenced to serve five years in the custody of the Mississippi Department of Corrections (MDOC), with two years suspended.
¶ 2. Lenard now appeals, arguing six assignments of error: (1) the trial judge erred in denying Lenard’s motion for recu-sal; (2) the trial court erred in denying Lenard’s “empty chair” defense; (3) the trial court erred in denying Lenard’s motion in limine to exclude records obtained from the Mississippi Department of Human Services (DHS); (4) the trial court erred by refusing to give jury instructions D-l, D-9, and D-10; (5) the trial court erred in permitting police officers to testify to their opinion as to the presence of blood or other human fluids on clothing and bed clothes introduced as evidence without the items having been tested; and that (6) the cumulative errors in the trial warrant a reversal. Lenard asks this Court to reverse her conviction and remand her case to the trial court for a new trial.
¶ 3. We find that the circuit court erred in denying Lenard’s requested instructions which were relevant to her defense theory pertaining to the requisite mens rea necessary to prove felony deprivation of a child, as well as Lenard’s related requested instructions pertaining to her mistake-of-fact defense. The failure to provide these instructions denied Lenard the opportunity to have the jury consider her defense theory, and, therefore, adhering to precedent, we cannot find this error harmless. See Davis v. State, 18 So.3d 842, 850 (¶ 22) (Miss.2009). We reverse and remand to the circuit court without discussing the remaining assignments of error.
*242 FACTS
¶ 4. On October 26, 2007, when Amy Lenard served as a fill-in for legal secretary Stephanie Havens, Lenard asked Shannon Caine, her friend and former boyfriend, to babysit her two-year-old son, Aaron, while she worked.[1] Late in the day, Caine called Lenard, reporting that Aaron had been burned by hot water. Caine explained that he had been running bathwater, and he had gotten distracted by a phone call. He explained that while he was distracted, Aaron climbed into the tub and accidentally burned himself in the tub water. Caine then brought Aaron to see Lenard at work, where she comforted the boy. Debbie Caine, Shannon’s mother, testified that when she saw Aaron later that day, his neck was red and he was “whiny.”
¶ 5. Mrs. Caine testified that when she saw Aaron the next day, he was playing with his brother “just like a boy.” George Sanford, an investigator for the law office where Lenard substituted as a secretary, also reported seeing Aaron during the relevant time period after he received the burn. Sanford testified that Aaron played with him and did not appear to be in horrible pain.
¶ 6. David Trotter, the son of the regular secretary, also testified that he saw Aaron a few days after the burning incident, and he reported that Aaron’s back appeared only sunburned. Trotter said he saw no blisters on Aaron’s back, and testified that Aaron rough-housed like a regular two-year-old boy.
¶ 7. The regular secretary, Havens, testified that she saw Aaron’s back sometime between October 27, 2007 and October 29, 2007. She also stated that his back looked sunburned, and she advised Lenard to apply salve on the burn. Lenard applied a prescription antibiotic cream to the burn, but later bought an over-the-counter medicine called Burn Gel Plus to apply instead. On October 30, 2007, Lenard applied the Burn Gel Plus to Aaron’s back. The next morning, on October 31, 2007, Lenard noticed a difference in the appearance of Aaron’s back when she was dressing him.[2] Lenard went to Walker’s office to again seek Haven’s advice.
¶ 8. Towanda Anderson and her son, Eley Anderson, Jr., were also in Walker’s office at the time. Mrs. Anderson observed that Aaron was crying uncontrollably, and she noticed that he “was walking funny.” After Towanda and Eley left the office, they were immediately called back into the office to examine Aaron.[3] During Eley’s examination of the child, Lenard pulled up Aaron’s shirt, and Tawanda could see that Aaron was “severely burned.” Tawanda and Eley advised Lenard to seek immediate medical care for Aaron’s burns. Lenard then took Aaron to the Tri-Lakes Medical Center in Oxford.
¶ 9. After examining Aaron, Dr. Scott Sanford, the emergency room director, called the Lafayette County Sheriffs Department, and an investigator took photos of Aaron’s injuries. Investigator Mark Whitten took custody of all the clothing taken off Aaron’s body at the hospital. Investigator Whitten testified that he as *243 certained no need to order tests for the clothing. He explained that he found tests unnecessary because “you could see the skin and where the skin had come loose from the child.” After medical personnel cleaned and dressed Aaron’s wounds, he was thereafter transported to the burn unit at Le Bonheur Children’s Hospital in Memphis, Tennessee. Personnel at Le Bonheur administered morphine to relieve Aaron’s pain. Both Lenard and Caine were subsequently arrested and indicted jointly on the charge of felony child deprivation pursuant to Mississippi Code Annotated section 97-5-39(1)(b) (Rev.2006).
¶ 10. On June 30, 2008, Lenard moved to transfer, dismiss, or abate the proceedings on the basis of several legal arguments, which will be addressed in this opinion. The court denied Lenard’s motions. Then, on October 13, 2008, two days before trial, Lenard filed a motion for the recusal of the circuit judge, Jim McClure, upon learning that Lenard’s counsel had previously sued and taken judgment against McClure’s previous law firm, causing the judge a direct or indirect cost as part of the judgment. McClure denied the motion as untimely under URCCC 1.15.
¶ 11. On the day of trial, Lenard moved under Mississippi Code Annotated section 43-21-261 to prohibit disclosure of any DHS, law enforcement, or medical records, or evidence of any kind, stemming from DHS’s investigation of this matter. Lenard filed motions in limine to exclude the graphic photos of Aaron’s burns, as well as to exclude opinion testimony from police or other lay witnesses as to the source of stains, skin, tissue, exudates, or other substances on the clothes and bed taken into evidence by the police from Lenard’s home. The court denied these motions. Lenard later renewed her motion to dismiss as to the vagueness of the statute on the basis of no meaningful definition of “substantial harm” to the child.
¶ 12. At trial, during opening arguments, Lenard’s counsel raised the issue of the indicted co-accused Caine’s absence and attempted to implement the empty chair defense before the jury. The State objected, and the court sustained the objection. The circuit court disallowed Lenard’s empty chair defense on the basis that the State elected to sever the cases, and the court accepted the State’s assertion that the State would pursue the prosecution of Caine at a later date.
¶ 13. At trial, three experts testified as follows: a treating doctor, a child abuse specialist, and a pharmacist. Dr. Karin Lakin, medical director for the Le Bonh-eur child assessment program and Aaron’s treating doctor, testified that Aaron’s skin would have begun to blister within one to three days of the initial injury. However, the pharmacist, Dr. John Juergens, testified that the medicine labeled Burn Gel Plus caused a chemical burn that aggravated and contributed to the damage appearing in the photographs. The circuit court allowed the investigating officers to opine about the source and effect of various ointments, creams, and human exudates.
¶ 14. At the close of trial, Lenard attempted to offer instructions pertaining to the following areas of law: the degree of culpability required in a felony neglect case; the meaning of “substantial injury” to the child; and the issue of mistake or ignorance of fact. Lenard submitted model instructions on “culpable negligence” and “mistake-of-fact,” as well as instructions intended to provide the jury guidance for the elements of both, which attempted to define “willful” and “substantial harm.” The court denied Lenard’s request for these instructions requested.
¶ 15. After a trial held on October 15 and 16, 2008, the jury found Lenard guilty *244 of felony child deprivation in violation of Section 97 — 5—39(l)(b). Lenard moved for a judgment notwithstanding the verdict, which was denied at sentencing. Lenard now appeals her conviction and sentence.
STANDARD OF REVIEW
¶ 16. In this case, the circuit court’s refusal of Lenard’s requested defense instructions resulted in error. We therefore find it instructive to reflect upon the law pertaining to appellate review of denial of jury instructions. When reviewing a denial of a jury instruction, an appellate court “must consider not only the denied instruction but also all of the instructions which were given to ascertain if error lies in the refusal to give the requested instruction.” Ousley v. State, 984 So.2d 996, 1000 (¶ 15) (Miss.Ct.App.2007) (citing Divine v. State, 947 So.2d 1017, 1021 (¶ 6) (Miss.Ct.App.2007)) (cert. granted on other issue, 984 So.2d 985 (Miss.2008)). We acknowledge that the Mississippi Supreme Court has also held that a trial court “may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.” Ladnier v. State, 878 So.2d 926, 931 (¶ 20) (Miss.2004) (citation omitted).
¶ 17. The Mississippi Supreme Court recently reiterated that the defendant possesses a right to jury instructions supporting his or her theory of the defense when reasonably raised by the evidence. Brown v. State, 39 So.3d 890, 899 (¶ 34) (Miss.2010). We consider such a right inherent to a fair trial. The court in Brown also stated that when a trial judge is confronted with
an improperly[-]worded jury instruction attempting to set out a point of law on which the jury should be instructed, and which is not covered elsewhere in other jury instructions already given, the judge should take whatever remedial action necessary to present a properly worded instruction to the jury on that point of law.
Id. at 900 (¶ 36) (citation omitted). The Mississippi Supreme Court advised trial judges to remember that all doubts regarding whether an instruction should be included should be resolved in favor of the accused. Id. We now apply the law to the facts of this case.
¶ 18. In our discussion, we will first evaluate the State’s assertion that the offense of felony child deprivation constitutes a strict criminal liability offense. We will then evaluate the level of mens rea required to prove felony child deprivation. Next, we will address the applicability of the mistake-of-fact defense to this offense, as well as examine the evidence raised in this case. We will then conclude by addressing whether the circuit court erred in denying Lenard’s defense instructions, and whether such error resulted in reversible error.
DISCUSSION

Offense of Felony Child Deprivation: Is the Offense a Strict Criminal Liability Offense?

¶ 19. The State argues that the felony offense of child deprivation contains no burden of proof to show any requisite intent on behalf of the parent to deprive a child of a necessity, such as medical care. The State bases this argument on the language of the charged statute, which prohibits a parent from willfully committing any act, or omitting the performance of any duty, which thereby deprives a child of medical care. Miss.Code Ann. § 97-5-39(l)(b). The State asserts that Lenard was not prosecuted for an intentional act even though the indictment charges Lenard with “wilfully, unlawfully and felo- *245 niously” depriving her child of necessary health care.[4]
¶ 20. The State further argues that if a parent omits his or her duty of providing medical care, then the offense of deprivation is thereby established by strict liability criminal responsibility, without regard to whether the parent knew or should have known to act. The error of the State’s argument lies in the legal meaning of the term “deprivation” as used in this statute, and the mens rea required to prove breach of parental duty.
¶ 21. Although the felony statutory provision charged is recently enacted, the failure of a parent to knowingly furnish medical treatment to a child has long been recognized as a criminal offense in most jurisdictions, including Mississippi. Matthews v. State, 240 Miss. 189, 193, 126 So.2d 245, 246 (1961). In 2007, the Mississippi legislature amended section 97-5-39(1)(a)-(b) to provide that child deprivation now constitutes a felony. Mississippi law, however, previously recognized child neglect as a misdemeanor offense under this same statute and has also previously recognized the offense of felonious child abuse for intentional acts resulting in serious bodily injury See Scarbough v. State, 893 So.2d 265 (Miss.Ct.App.2004) (husband and wife convicted of felonious child abuse for failure to provide adequate medical treatment for their child after they witnessed several falls resulting in fractures, and their actions could be interpreted as intentional).
¶ 22. Regarding parental duty of care, the Mississippi Supreme Court explained that the correct rule required “the furnishing of medical treatment in such a manner and on such occasions as an ordinarily prudent person, solicitous for the welfare of his child and anxious to promote its recovery, would provide.” Matthews, 240 Miss, at 193, 126 So.2d at 246 (citation omitted). In other words, a duty to provide medical care by a parent arises if a reasonably prudent parent would have known medical care was warranted. See Eggleston v. Landrum, 210 Miss. 645, 50 So.2d 364, 366 (1951) (Discussing obligations of parents to give medical treatment to a minor, and recognizing that penalties may be imposed upon parents who fail to perform their duty in this respect). The determination of whether a reasonably prudent parent would have known that medical care was required under the same or similar circumstances necessarily entails an element of proof as to mens rea, which requires a showing of either a knowing breach of parental duty based upon the circumstances of this case, or negligent breach of parental duty. Courts indeed recognize that knowledge can be inferred from the circumstances of medical care deprivation. State v. Collins, 986 S.W.2d 13, 18-19 (Tenn.Crim.App.1998).
¶ 23. Thus, with respect to mens rea, this case requires a determination by the jury of whether a duty existed herein in light of what a reasonably prudent parent under the same or similar circumstances *246 knew or should have known. The logic of the State’s argument of strict liability criminal responsibility bypasses a determination of the existence of negligence or willfulness. As previously discussed, this determination of negligence requires that, under these particular circumstances,[5] a reasonably prudent parent would have known earlier that medical treatment above and beyond the antibiotic salve and the burn gel was needed,[6] and whether in light of the facts of this case, that Lenard knowingly omitted or neglected her duty by failing to act as a reasonably prudent parent by improperly delaying seeking medical care for Aaron. In short, a determination of negligence requires a determination of breach of parental duty.
¶ 24. Courts have examined whether the circumstances sufficiently reflected that a parent deviated from the applicable standard of care when a child was injured due to abuse or suspected abuse. See Woods v. State, 724 So.2d 40 (Ala.Crim.App.1997); State v. Miranda, 260 Conn. 93, 794 A.2d 506 (2002) (cert. denied by 537 U.S. 902, 123 S.Ct. 224, 154 L.Ed.2d 175 (2002)) (Deviation from standard of parental care in this case encompassed consideration of defendant’s knowledge of the injuries, the seriousness of the injuries, and the subsequent intentional failure to seek prompt medical attention). In a case also involving a burn injury, Rice v. State, 113 Nev. 1300, 949 P.2d 262, 268 (1997) (abrogated on other grounds by Rosas v. State, 122 Nev. 1258, 147 P.3d 1101 (2006)), the court found sufficient evidence to support the conclusion that for several days after her baby suffered burns, the mother knew or should have known that the baby required medical attention, and unreasonably failed to provide the necessary medical attention. See also State v. Pickles, 46 N.J. 542, 218 A.2d 609 (1966) (Mother placed four-year-old in hot water, causing serious burns, and then failed to provide medical treatment for approximately one week). In the case before us, we note that Lenard’s former boyfriend was supervising Aaron when he was burned. The jury must nonetheless determine whether Lenard breached her parental duty based upon what Lenard knew or should have known based upon the reasonable parent standard.
¶ 25. Prior to the codification of the statute charged here, the Mississippi Supreme Court addressed a conviction under a similar statutory offense for felony child abuse in Buffington v. State, 824 So.2d 576, 582 (¶¶ 23-25) (Miss.2002). The court’s analysis in Buffington looked at misdemeanor neglect offenses and acknowledged that these acts could be negligent or intentional. Id. at (¶¶ 23-25). The Buffington court considered the issue of mens rea as related to crimes or acts of omission prior to enactment of Mississippi’s offense for felony child deprivation, and in so doing, interpreted the language at issue in Lenard’s case (Modified at section 97-5-39(1)(a) (misdemeanor neglect). Id. The Buffington court determined that acts of omission could constitute a crime for intentional abusive behavior for purposes of the felony child abuse statute where seriously bodily injury resulted. Id. at (¶ 25).
¶ 26. Relevant to the case before us, the Buffington court, in its analysis, ac *247 knowledged that acts of omission also constituted offenses under misdemeanor neglect crimes in accordance with section 97-5-39(1). 824 So.2d at 582 (¶ 24). Significant to our analysis, the court acknowledged that the misdemeanor offenses for acts of omission encompassed omissions that were negligent or intentional. Id.
¶ 27. The State charged Lenard with violating section 97—5—39(1)(b), the newly amended provision of the same statute referenced in Buffington, which had previously classified acts of omission as a misdemeanor if the acts did not result in serious bodily injury, or if the acts were not intentional, even where serious bodily injury resulted. The amended provision[7] now provides an escalated felony level offense where the willful act or omission of a necessity results in substantial harm to the child. See also J.C.N.F. v. Stone County Dep’t of Human Services, 996 So.2d 762, 771 (¶ 33) (Miss.2008) (citing section 97-5-39(1) and explaining the provision as “stating that willful acts or omissions of the accused resulting in the neglect, delinquency, or abuse of a child is a misdemeanor” and “that if the neglect of the child results in substantial harm to the child’s health,” the accused may be subject to a felony level punishment). A review of jurisprudence yields the conclusion that the offense of child deprivation possesses a mens rea burden of proof requirement.
¶ 28. In determining whether this new offense constitutes a strict liability offense as asserted by the State, we additionally reviewed the plain language of section 97-5 — 39(l)(a)(b) in context. We also reviewed subsection (l)(a), which provides that “any parent, guardian or other person who willfully commits any act or omits the performance of any duty, which act or omission contributes to or tends to contribute to the neglect or delinquency of any child or which act or omission results in the abuse of any child” shall be guilty of a misdemeanor. Then, building on the language in subsection (l)(a), the language of subsection (l)(b) sets forth a felony punishment when the resulting deprivation of a necessity results in substantial harm to the child. The statutory language requiring a “deprivation” resulting in substantial harm also reflects a mens rea evidentiary requirement to prove a breach of the duty to provide for the child. In conclusion to this portion of inquiry, we find that to prove the offense of felony deprivation, the State must prove that the acts or omissions were negligent or intentional. Therefore, this offense does not constitute strict liability.[8]

Mens Rea for the Offense of Felony Child Deprivation

¶ 29. Having resolved that felony child deprivation encompasses a mens rea element of proof, we acknowledge that the charge of deprivation intrinsically requires a neglectful or intentional breach of parental duty, such as the withholding of medical care where a duty exists to pro *248 vide such care, as alleged herein. To determine if the omission resulted from negligence, the jury must determine if the parent knew or should have known of a duty to act, i.e., provide medical care, and whether the parent breached that duty. To deprive, by its very meaning, entails a withholding when a legal duty to act to provide medical care exists. See Matthews, 240 Miss. at 192-93, 126 So.2d at 246 (Parent must furnish his minor child medical treatment as “an ordinarily prudent person, solicitous for the welfare of [the] child and anxious to promote its recovery, would provide”). To prove felony deprivation, with respect to mens rea, the State must show that Lenard acted negligently, knowingly, or acted intentionally in failing to obtain medical care for Aaron sooner.
¶ 30. As jurisprudence reflects, we cannot ignore the relevance of the parent’s knowledge or what should have been reasonably apparent to the parent. In some cases, courts have found that despite a failure to attain needed medical care, evidence was insufficient to support criminal charges where evidence failed to show that the seriousness of the child’s illness was apparent to the parents. Craig v. State, 220 Md. 590, 155 A.2d 684 (1959); see also State v. Watson, 71 A. 1113 (N.J.Sup.Ct.1909) (reversing manslaughter verdict arising from failure to provide medical care because judge’s instructions to jury failed to sufficiently distinguish between ordinary negligence and the gross and culpable negligence required at common law to constitute a crime); State v. Owens, 820 S.W.2d 757 (Tenn.Crim.App.1991) (court held mother’s conduct was not a gross deviation from the ordinary standard of care, even though the record showed some carelessness and negligence). In short, the State must show some awareness by the parent of the need of the child, or the parent’s duty to act.

Mistake-of-Fact Defense

¶ 31. The mistake-of-fact defense applies to offenses wherein some knowledge of the accused or felonious mens rea is at issue. See Johnson v. State, 831 So.2d 1171, 1173 (¶ 14) (Miss.Ct.App.2002). This theory provides Lenard a potentially viable defense for violation of the child deprivation statute. In evaluating whether Lenard, through neglect or intentional acts, caused child deprivation by omission of a duty, a determination must be made by the jury as to whether Lenard negligently breached her parental duty. This analysis necessarily entails consideration of what Lenard knew or should have known under the circumstances. As discussed previously, the State incorrectly claims that the burden of proof contains no mens rea or intent requirement in its assertion that the defense of mistake-of-fact is inapplicable. Jurisprudence allows Lenard to assert a defense theory based upon a mistake-of-fact defense for the offense charged herein— felony child deprivation, if reasonably raised by the evidence.
¶ 32. We also note that in the present case, the circuit court found that the evidence failed to support the defense’s request for the mistake-of-fact instruction. Upon review of the record, we, however, disagree and And sufficient evidence to support the defense request for the mistake-of-fact instruction, particularly in light of recent Mississippi Supreme Court precedent. The Mississippi Supreme Court addressed the requirement of an evidentiary basis in explaining that “[o]n appellate review of the trial court’s grant or denial of a proposed jury instruction, [the court’s] primary concern is that ‘the jury was fairly instructed, and that each *249 party’s proof-grounded theory of the case was placed before it.’ ” Young v. Guild, 7 So.3d 251, 259 (¶ 24) (Miss.2009) (citation omitted) (Trial courts may refuse instructions which incorrectly state the law, are covered fairly elsewhere in the instructions, or are without foundation in the evidence.). With respect to the needed evidentiary foundation, the supreme court has also stated that “[a] defendant is entitled to have instructions on his theory of the case presented, even though the evidence that supports it is weak, inconsistent, or of doubtful credibility.” Ellis v. State, 778 So.2d 114, 118 (¶ 15) (Miss.2000) (citing Giles v. State, 650 So.2d 846, 854 (Miss.1995)).[9] The merits of a defense theory fall within the purview of the jury to determine.
¶ 33. We find some awareness by the parent of the duty to act inherent to the offense of felony deprivation; and, therefore, a mistake-of-fact defense applies to this charged offense if warranted by the evidence. A review of the record herein also reflects that sufficient evidence does exist to raise the instruction as to whether Lenard knew or should have known that the non-prescription topical medication that she applied to her son’s burns constituted insufficient medical treatment for his injury, and if so, whether she knowingly delayed seeking further medical treatment from medical professionals. The merits of Lenard’s defense theory should be before a properly instructed jury to determine. In reviewing the instructions given as a whole, we find that the circuit court erred in refusing Lenard’s mistake-of-fact instruction, since none of the jury instructions that were given at the trial covered the defense theory of mistake-of-fact.
¶ 34. In our review of the instructions given, and the applicable case law, we further recognize that the court in Brown affirmed a defendant’s right to assert alternative theories of defense. Brown, 39 So.3d at 899 (¶ 34). Therefore, the fact that the circuit court provided a different instruction to the jury informing them of an alternate theory to acquit Lenard if the jury found that the child’s injuries resulted from the burn gel, and not the hot water, provides the State no relief for the circuit court’s refusal of the instructions pertaining to mens rea or substitution for the refused mistake-of-fact instruction.[10] Lenard could assert alternative defense theories that included claiming that the burn gel caused the injuries, as well as the theory that she mistakenly believed that the burn gel constituted appropriate medical care for the burn. These theories assert separate and distinct defenses. The failure of the circuit court to allow her alternative theory to be considered by the jury resulted in error.

Trial Court’s Duty to Instruct the Jury

¶ 35. In addressing whether the error constituted reversible error, we find that in Brown, 39 So.3d at 897 (¶ 27), the Mississippi Supreme Court found that an appellate court should “read and consider the jury instructions as a whole in order to determine if error was committed.”[11] Hence, as reflected above, we have exam *250 ined the jury instructions given by the circuit court as a whole. The court in Brown explained that “jurors must be given appropriate instructions which fairly announce the law applicable to the case so as not to ‘create an injustice against the defendant.’” Id. (citation omitted). The Brown court addressed the trial court’s duty with respect to instructions, stating that:
while a defendant must be assured of the opportunity to present his theory of the case to the jury via appropriately worded jury instructions, the trial court has the discretion to refuse an instruction which contains an incorrect statement of the law, which already is covered adequately in other instructions already given, or which is unsupported by the evidence.
Id. The court then urged trial judges “to remember that if ‘serious doubt exists as to whether an instruction should be included, the doubt should be resolved in favor of the accused.’ ” Id. at 897-98 (¶ 37) (quoting Davis v. State, 18 So.3d 842, 847 (¶ 15) (Miss.2004)).
¶ 36. In Brown, the supreme court reversed the circuit court’s failure to give an instruction on accidental shooting when an evidentiary basis existed for the instruction. Id. at 898 (¶ 38). The court held that it could not find the error harmless since “a properly worded accidental shooting instruction may have been the difference between a guilty verdict and a not[-]guilty verdict.” Id.
¶ 37. Similarly, in the present case, either the refused mistake-of-fact defense instruction or the refused instruction as to the intent required for the State to prove child deprivation may have provided the jury guidance constituting the difference between a guilty verdict and a not-guilty verdict for Lenard.[12] Needless to say, the combined effect of the denial of both instructions relating to intent resulted in reversible error and materially prejudiced Lenard’s ability to present her defense to the jury for consideration.
¶ 38. Mississippi law holds that if the State fails to prove beyond reasonable doubt that the defendant acted with knowledge of the true facts, then the defendant must be found not guilty. Johnson, 831 So.2d at 1173 (¶ 15). The circuit court erred in refusing Lenard’s instruction asserting her theories of defense that were reasonably raised by the evidence and not covered elsewhere in instructions given to the jury.[13]

Conclusion

¶ 39. Based upon the foregoing, we find that the circuit court erred in refusing the defense’s offered instruction which provid *251 ed the jury guidance as to the mens rea required to prove felony child deprivation, as well as the instruction as to Lenard’s asserted mistake-of-fact defense theory. The denial of Lenard’s requested instructions prevented the jury from considering her defense theories, and therefore the denial constituted reversible error. See Johnson v. State, 823 So.2d 582, 584 (¶ 4) (Miss.Ct.App.2002). We consequentially reverse Lenard’s conviction of felony child deprivation, and we remand this case back to the circuit court for a new trial.
¶ 40. THE JUDGMENT OF THE CIRCUIT COURT OF PANOLA COUNTY IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO PANOLA COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. ROBERTS AND MAXWELL, JJ., CONCUR IN PART AND IN THE RESULT.

. Havens was employed as a legal secretary for attorney David Walker in Batesville, Mississippi.

. Photographs in the record show that Aaron’s skin “bubbled” over, as a result of his injuries.

.Havens testified at trial that she was aware that Eley had attended EMT school and was employed as an emergency medical technician.

. With respect to the State’s assertion that deprivation constitutes a strict liability criminal responsibility offense, we acknowledge such strict responsibility exists for some offenses. Statutory rape, for example, constitutes a strict liability criminal offense existing in statute as a modification of the common law criminal intent requirement. Collins v. State, 691 So.2d 918, 923 (Miss.1997); U.S. v. Ransom, 942 F.2d 775, 776 (10th Cir.1991). Statutory rape provides criminal liability based upon carnal knowledge with a person below a particular age set forth by statute, without regard to criminal intent or knowledge of such age. Collins, 691 So.2d at 923. A lack of an intent element does not render a statute unconstitutional. Id. at 923-24.

. A determination of what a reasonably prudent parents would have done under these circumstances may encompass the circumstances of what facts Lenard knew surrounding the burn as related to her by her former boyfriend.

. In other words, whether Lenard improperly delayed seeking medical care by a medical professional.

. Practically speaking, prior to the codification of the new felony offense of child deprivation, if a parent negligently but unintentionally deprived a child, resulting in substantial harm, then the parent was guilty only of misdemeanor neglect.

. The court in Yates v. State, 685 So.2d 715, 719-20 (Miss.1996) (overruled by Buffington, 824 So.2d at 580 (¶ 15) as to the meaning of "serious bodily harm”), explained that the only distinction between the statutory offenses of felony child abuse and misdemeanor child abuse constituted the element of serious bodily harm. Similarly, with respect to the child neglect offenses, we find that the distinction between misdemeanor neglect and felony child deprivation is the element of proof of substantial harm to the child's physical, mental, or emotional health. See also Miss.Code Ann. § 43-21-105(m) (Rev.2009) (defining "abused child”).

. See also Reddix v. State, 731 So.2d 591, 595 (¶ 20) (Miss.1999) (reversing where the jury could not have acquitted Reddix based upon self-defense because the jury was not informed of any law permitting them to do so.).

. See also West v. State, 725 So.2d 872, 888 (¶¶ 66-67) (Miss.1998) (overruled on other grounds); Jackson v. State, 860 So.2d 653 (Miss.2003).

. See Rushing v. State, 911 So.2d 526, 537 (¶ 24) (Miss.2005) (Reversal not warranted "where all instructions taken as a whole fairly—although not perfectly—announce the applicable primary rules of law.”).

. The circuit court provided the jury with the following instruction as to the elements the jury was required to find to convict for child deprivation:
If the jury finds from the evidence in this case, beyond a reasonable doubt, that:
1. Between the dates of October 25, 2007 and October 31, 2007;
2. Amy Marie Lenard did deprive Aaron Fuqua ... of necessary health care appropriate to the child's age;
3. And said deprivation resulted in substantial harm to the child’s physical health, then you shall find the Defendant, Amy Marie Lenard, guilty of Felony Child Deprivation.
With respect to explaining the elements above, the circuit court denied Lenard’s request to instruct the jury that "deprivation” requires an awareness or willfulness. The instruction to the jury on the elements of this offense set forth above contained no explanation of the term "deprivation.” The circuit court also denied Lenard’s mistake-of-fact instruction.

. See Young v. Guild, 7 So.3d 251, 259 (¶ 24) (Miss.2009) (citing Splain v. Hines, 609 So.2d 1234, 1239 (Miss.1992)).