989 So.2d 887 (2007)
Isreal Boone PAGE a/k/a Scooter, Appellant
v.
STATE of Mississippi, Appellee.
No. 2006-KA-00330-COA.
Court of Appeals of Mississippi.
August 28, 2007.
Rehearing Denied May 20, 2008.
Certiorari Denied August 28, 2008.
*888 Pearson Liddell, Mississippi State, attorney for appellant.
Office of the Attorney General by Ladonna C. Holland, attorney for appellee.
Before MYERS, P.J., ISHEE, ROBERTS and CARLTON, JJ.
ROBERTS, J., for the Court.

SUMMARY OF THE CASE
¶ 1. A jury sitting before the Oktibbeha County Circuit Court found Isreal Boone Page guilty of the murder of Dorothy Hall. The jury also found Page guilty of possession of a deadly weapon by a previously convicted felon. Incident to Page's murder conviction, the circuit court sentenced Page to life imprisonment in the Mississippi Department of Corrections. As for the possession conviction, the circuit court sentenced Page to three years in the custody of the MDOC, to run concurrent with the sentence incident to Page's murder conviction.
¶ 2. Aggrieved, Page advances three issues on appeal. First, for reasons that will become abundantly clear, Page claims the circuit court should have granted a mistrial after it severed one count from the previous three-count indictment. Second, Page claims the circuit court erred when it did not give a culpable negligence manslaughter instruction. Finally, Page claims that "[o]ther errors found, even if insufficient to warrant reversal individually, *889 taken together, have prejudiced the appellant's right to a fair trial." Finding no error, we affirm.

FACTS
¶ 3. Just after midnight on May 22, 2004, the Oktibbeha County Sheriff's Department received a report that a woman had been shot. Deputy Shank Phelps and two other deputies responded. They found Dorothy Hall lying in her bedroom. Unfortunately, emergency responders could do nothing to save her. Hall was transported to Pearl, Mississippi for a forensic examination and an autopsy.
¶ 4. Deputy Phelps encountered Dorothy's daughter, Tlisha Boxley, in the street outside Hall's home. Tlisha, then nine years old, informed Deputy Phelps that she personally witnessed Isreal Page shoot her mother. Later that morning, Tlisha gave a statement. Otherwise, Deputy Phelps recovered a .12 gauge shotgun and a spent shotgun shell from the scene.
¶ 5. Later that same day, Greg Page, Isreal Page's brother, brought Deputy Phelps a .22 caliber rifle. Deputy Phelps asked Isreal Page if he knew anything about the .22 caliber rifle. Isreal Page admitted that it belonged to him.

PROCEDURAL HISTORY
¶ 6. On July 20, 2004, the Oktibbeha County Grand Jury returned a three-count indictment against Page. Count I charged Page with murder. Count II charged Page with unlawful possession of a shotgun as a prior convicted felon. Count III charged Page with unlawful possession of the .22 caliber rifle as a prior convicted felon. Page pled "not-guilty" incident to all three counts.
¶ 7. On July 29, 2005, Page filed a motion to sever Counts II and III from Count I. On July 31, 2005, the circuit court conducted a hearing on Page's motion to sever. During the hearing, Page submitted that the circuit court should sever Count III, the possession of the .22 caliber rifle charge, from Counts I and II. Based on the belief that Boxley would likely testify that Page had four or five firearms on the night of May 22, 2004, the circuit court overruled Page's motion to sever and the parties proceeded with jury selection.
¶ 8. After Page renewed his motion to sever, the prosecution began its case-in-chief. The prosecution called Dr. Steven Hayne as its first witness. Dr. Hayne performed Dorothy's autopsy. According to Dr. Hayne's expert opinion, Dorothy died as a result of a shotgun wound to the upper part of her chest. Further, Dr. Hayne opined that the fatal shot was fired from approximately four feet from Dorothy.
¶ 9. Next, the prosecution called Dorothy's daughter, Tlisha Boxley. As of the date of trial, Tlisha was ten years old. Tlisha testified that Page was abusive with Dorothy. Tlisha related an incident in which Page, Dorothy, Tlisha, and her younger brother were on a trip to visit Page's family. According to Tlisha, Page forced Dorothy to stop on the side of a dirt road because Page was unhappy with Dorothy's clothes. Tlisha testified that Page grabbed Dorothy by her hair, dragged her down the dirt road and into some nearby woods, forced her to take off her clothes, and "fussed" at her. Tlisha stated that Page told her and her brother to stay with the car, but they disobeyed because they feared for their mother's safety.
¶ 10. Tlisha then related another incident in which Page was abusive with Dorothy. That time, Page forced Dorothy and Tlisha into his car, drove them down "a different dirt road," and hit Tlisha in the head. Dorothy got out of Page's car while he was still driving. Page stopped his car, *890 got out, caught Dorothy, and "started beating her up, and kicking her in the stomach while she [lay] on the ground." Tlisha intervened, and they returned to Page's house. Shortly after they arrived, Dorothy tried to take Tlisha and leave. At that point, Page choked Dorothy until Tlisha was able to get some of Page's cousins to stop Page.
¶ 11. Tlisha then testified as to the events as they transpired on the day Dorothy died. According to Tlisha, she had attended a graduation with some family acquaintances. Afterwards, she rode with a family friend to a gas station, where she met Page and Dorothy in Dorothy's car. Tlisha noticed that Page looked angry. To be precise, Tlisha testified, "I hopped out the car anyway because I wanted to go with my momma because I seen his [Page's] eyes red. And every time his eyes get red that means he's mad."
¶ 12. Dorothy, Page, and Tlisha then drove to Page's home. At that time, Dorothy and Tlisha were living with Page. Tlisha and Dorothy went into the living room, where Tlisha showed Dorothy some handheld computer games. Page went into his bedroom. According to Tlisha, Page called for Dorothy. Before long, Tlisha "heard them fussing." Because she was scared for her mother's safety, Tlisha interrupted and asked Dorothy whether she could have some pudding. Dorothy and Page were still "fussing" though  to the point that Tlisha "said, please don't let my momma die, because [she] was scared by the way they was fussing."
¶ 13. Dorothy later told Tlisha to get a blanket from another bedroom and to make a pallet on the floor. Tlisha complied and laid on the couch. Tlisha could not rest, though. Tlisha then testified:
I went and I keep on hearing them fussing. I keep getting scared. I went to go stand by the stove and all I see is a gun aimed at my momma. I didn't really see him aim it, but I seen the end of the black aiming at my momma. And then when I seen it when she got shot and she felled against the door and fell down.
Tlisha then testified that she asked Page why he shot her mother. When asked what Page did in response, Tlisha responded:
[Page] was running around. And he said, I didn't try to [shoot Dorothy]. But I said you had to, you were aiming that gun at her and you fussing at her. And then I kept saying, momma, wake up. And she wouldn't even wake up. And then I seen him running in the back and he knocked on his neighbor's back door.
¶ 14. Tlisha testified that Page "went by the woods" and that "when he came back, the gun wasn't in his hands no more." Tlisha related how she stood on the back porch and screamed for help. When no one came to her, she ran to a neighbor's house. A man answered the door, and Tlisha told him that Page shot her mother. That unidentified man walked to Page's house and returned with news that Dorothy was dead. In the meantime, someone contacted Oktibbeha County authorities. From the neighbor's house, Tlisha saw Page get in his car and leave the scene.
¶ 15. On cross-examination, Tlisha testified that she heard Page call 911. She then related the approximate distances regarding her positioning from the scene of the shooting and the window of visibility she had through Page's bedroom door. Those approximated estimates were thirty-two to thirty-six inches of visibility through Page's door, from a distance of approximately ten to twelve feet.
*891 ¶ 16. After Tlisha testified, the prosecution called Barbara Pennington, Dorothy's mother and Tlisha's grandmother. Barbara took custody of Tlisha after Dorothy's death. Barbara testified as to Dorothy and Page's relationship. She also testified that she did not coach Tlisha's testimony. Next, the prosecution called Deputy Shank Phelps. Deputy Phelps testified as to the Oktibbeha County Sheriff's Department's response and the subsequent investigation. When the prosecution attempted to submit a photograph, Page objected. After a somewhat lengthy discussion that is not pertinent to our present purposes, the circuit court adjourned for the evening.
¶ 17. The next morning, Page renewed his motion to sever. The circuit court found that Page's renewed motion was premature because the prosecution was still presenting its case-in-chief. Afterwards, Deputy Phelps resumed his testimony. Deputy Phelps testified regarding photographs he took at the scene. Deputy Phelps also testified that Page's brother, Greg Page, delivered a .22 caliber rifle to the sheriff's department the day that Dorothy was killed. Following cross-examination and redirect, the prosecution rested its case-in-chief.
¶ 18. Page moved for a directed verdict as to all counts. The circuit court overruled Page's motion. Page then renewed his motion to sever count three from counts one and two. Following argument from both sides, the circuit court granted Page's motion to sever count three. At that point, Page rested without presenting any evidence. After the conference on jury instructions, which will be discussed in greater detail below, the circuit court instructed the jury. The jury then deliberated and found Page guilty of murder and knowing possession of a firearm by a prior convicted felon. Following an unsuccessful post-trial motion for JNOV or, alternatively, for a new trial, Page appeals.

ANALYSIS

I. WHETHER THE TRIAL COURT ERRED BY NOT GRANTING THE MOTION TO SEVER THE THIRD COUNT OF THE MULTIPLE COUNT INDICTMENT PRETRIAL AND THE PREJUDICIAL EFFECT OF FAILING TO DO SO UNTIL THE CONCLUSION OF THE PROSECUTION'S CASE-IN-CHIEF?
¶ 19. Page claims the circuit court erred when it did not grant his motion to sever count three from counts one and two prior to trial. Further, Page claims the circuit court erred when it did not grant a mistrial as to counts one and two after the circuit court granted Page's motion to sever count three. In reviewing Page's claims, we are mindful of our standard of review. We review a circuit court's decision incident to a motion to sever according to our familiar "abuse of discretion" standard. Rushing v. State, 911 So.2d 526(¶ 12) (Miss.2005).
¶ 20. Page claims he experienced prejudice when the circuit court overruled his pretrial motion to sever and his renewed motion to sever because the jury heard evidence that he was guilty of possession of a deadly weapon as a prior convicted felon. According to Page, he suffered prejudice because, based on "the cumulative weight of enough charges against him, he must be guilty of something."
¶ 21. We do not find Page's contention persuasive. Based on Tlisha's earlier statement, it was possible that the evidence would have shown that all three counts occurred simultaneously. Further, under the circumstances, it was within the circuit court's discretion to wait until the prosecution concluded its case-in-chief to *892 make a final determination to sever count three. Pursuant to instruction S-8, the circuit court instructed the jury that "Count 3 has been severed from the trial of this case and must be tried separately by another jury. Therefore you need not deliberate on Count 3." Finally, Page never requested a mistrial incident to counts one and two. As such we can find no abuse of discretion on the part of the circuit court.

II. WHETHER THE DEFENDANT'S RIGHT TO FAIR TRIAL WAS PREJUDICED BY FAILING TO INSTRUCT THE JURY ON CULPABLE NEGLIGENCE HOMICIDE?
¶ 22. Page asserts that the circuit court erred when it did not instruct the jury pursuant to instruction D-13, which set forth the following:
The Court instructs the jury that if you believe from the evidence that Isreal Page shot Dorothy Hall by accident in the heat of passion upon any sudden and sufficient provocation then your verdict shall be "not guilty."
If you believe from the evidence that Isreal Page shot Dorothy Hall by culpable negligence and without authority of law where culpable negligence is such negligence as evidenced by flagrant and reckless disregard for the safety of others or willful indifference to the injury liable to follow; [or that Isreal Page shot Dorothy Hall without malice, in the heat of passion, without authority of law, and not in necessary self defense then you shall find Isreal Page guilty of manslaughter].
(emphasis in original). Page bases his argument on testimony from Tlisha that (a) she did not see Page aim the shotgun at Dorothy, (b) she heard a heated argument and thought, but was not certain, that Dorothy said, "Please don't shoot me," and (c) when she asked Page why he shot Dorothy, Page said, "I didn't try to."
¶ 23. To be entirely clear, Page sought a lesser-included offense instruction on manslaughter. "Every other killing of a human being, by the ... culpable negligence of another, and without authority of law, not provided for in this title, shall be manslaughter." Miss.Code Ann. § 97-3-47 (Rev.2006). "A lesser-included-offense instruction should be granted if, in view of the evidence, a reasonable juror could find the defendant not guilty of the principal offense charged in the indictment yet guilty of the lesser included offense." Holland v. State, 587 So.2d 848, 869 (Miss. 1991) (internal quotations omitted). "Conversely, only where the evidence could only justify a conviction of the principal charge should a lesser-included offense instruction be refused." Id. at 870.
¶ 24. As for Page's reliance on Tlisha's testimony that she did not see Page aim the shotgun at Dorothy, Page mischaracterizes Tlisha's testimony. Tlisha testified, "[A]ll I see is a gun aimed at my momma. I didn't really see him aim it, but I seen the end of the black aiming at my momma." As such, Tlisha testified that she could not see Page aim the shotgun, but she saw the "end of the black," Tlisha's description of the barrel, aimed at Dorothy. Only Page could have aimed the shotgun. What is more, Tlisha later testified that, when Page claimed he did not "try" to shoot Dorothy, Tlisha responded to Page and said, "[Y]ou had to, you were aiming that gun at her."
¶ 25. As for Page's reliance on the fact that, when Tlisha asked why he shot Dorothy, Page responded "I didn't try to," the complete lack of evidence to support that contention is fatal to Page's theory. The undisputed evidence proved that Page aimed a loaded shotgun at Dorothy and *893 that he shot her from four feet away. There is absolutely no evidence to support a claim that the shotgun discharged accidentally. As was his constitutional right, Page did not offer any proof of accident, and the circumstances admitted into evidence completely contradict any bare assumption of accident.
¶ 26. Tlisha also testified that Page was angry at Dorothy and that Page was "fussing" at Dorothy to the point that Tlisha prayed for her mother's life. Further, Tlisha testified that she thought she heard Dorothy say "please don't shoot me" immediately before Page killed Dorothy. Considering the foregoing, malice was implied because Dorothy's death occurred as a result of Page willfully shooting Dorothy from four feet away. There can be no doubt that a shotgun wound from near point blank range is likely to cause death or serious bodily injury. "The crime of manslaughter is defined as a killing without malice." Walker v. State, 671 So.2d 581, 598 (Miss.1995). "Malice is implied, and hence murder exists, whenever a death occurs as a result of some willful act by the accused under circumstances where he knows the act is likely to cause death or serious bodily injury." Id. What is more, "[m]alice ... may be proved or inferred from the use of a deadly weapon." Wilson v. State, 574 So.2d 1324, 1337 (Miss.1990). Because all the evidence indicated the presence of malice, and nothing indicated a lack of malice, the circuit court did not err when it declined to instruct the jury pursuant to instruction D-13.

III. WHETHER THE PREVIOUSLY DESCRIBED ERROR, IF FOUND TO BE HARMLESS INDIVIDUALLY, IN ACCUMULATION CONSTITUTES REVERSIBLE ERROR?
¶ 27. We have found no error, harmless or otherwise. Accordingly, there can be no accumulation of errors. This assignment of error is completely meritless.
¶ 28. THE JUDGMENT OF THE OKTIBBEHA COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, MURDER, AND SENTENCE OF LIFE IMPRISONMENT AND COUNT II, POSSESSION OF A DEADLY WEAPON BY A PREVIOUSLY CONVICTED FELON AND SENTENCE OF THREE YEARS TO RUN CONSECUTIVELY TO THE SENTENCE IN COUNT I, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO OKTIBBEHA COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND CARLTON, JJ., CONCUR.