*663
 
 ROBERTS, J.,
 

 for the Court.
 

 ¶ 1. A jury sitting before the Scott County Circuit Court found Ray Thomas Gore guilty of murder. The circuit court sentenced Gore to life in the custody of the Mississippi Department of Corrections. Aggrieved, Gore appeals and claims the circuit court erred when it denied the prosecution’s proposed jury instruction on the lesser-included offense of manslaughter. Additionally, Gore claims the circuit court erred when it denied his proposed circumstantial-evidence instruction. Finding no error, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. Gore and Jacqueline Ford had separate apartments in the Oakdale Apartments complex located in Forest, Mississippi. Jacqueline and her five-year-old son, Sonny, went to Gore’s apartment after Sonny got out of school on February 7, 2008. The three had dinner at Gore’s apartment and remained there throughout most of the evening. Sometime between 8:00 and 9:00 p.m., Jacqueline left Sonny with Gore while she went to a store.
 
 [1]
 
 During that time, a man identified as “Freddie” visited Gore’s apartment. Freddie remained at Gore’s apartment after Jacqueline returned from the store.
 

 ¶ 3. At approximately 12:30 or 1:00 a.m. on February 8, 2008, Freddie and Jacqueline left and went back to the store. Again, Jacqueline left Sonny with Gore while she was gone. Because they had not returned, Gore went to Jacqueline’s apartment at approximately 3:40 a.m., where he found Jacqueline and Freddie. Gore informed Jacqueline that she needed to come to his apartment and get her son. Afterward, Gore returned to his apartment.
 

 ¶ 4. At Gore’s request, Jacqueline walked to his apartment to pick up her son. A confrontation ensued. Although the precise events that transpired were contested at trial, it was undisputed that Jacqueline died due to a gunshot fired from a rifle Gore was holding.
 

 ¶ 5. At trial, Nicole Wright testified that she also lived in the Oakdale Apartments complex. Wright testified that, during the early morning hours of February 8, 2008, Gore came to her apartment, and after she answered the door, Gore said, “[c]all 911 because I done [sic] shot Jackie.” As requested, Wright called 911. She and Gore then walked back to Gore’s apartment.
 

 ¶ 6. In the meantime, Sonny had left Gore’s apartment. Brenda Leffingwell, the site manager for Oakdale Apartments, testified that at approximately 4:00 a.m., she heard the five-year-old boy screaming outside her apartment. Leffingwell hurried to determine why Sonny was screaming, but before she could get to her front door, Sonny knocked on her door. Leff-ingwell quickly opened her door and got to Sonny. According to Leffingwell, Sonny was “hysterical.” Leffingwell took Sonny with her as she attempted to determine the cause of Sonny’s emotional state. She encountered Gore and Wright after Gore called out to her. Leffingwell asked Gore where she could find Jacqueline. According to Leffingwell, Gore responded, “she’s dead. I killed her. I shot her.”
 

 ¶ 7. At separate times before authorities arrived, both Wright and Leffingwell went inside Gore’s apartment. Both later testified that Jacqueline was in a pool of blood on Gore’s floor. Both later testified that Jacqueline was still alive at that time. Despite the efforts of medical personnel, Jac
 
 *664
 
 queline died at approximately 11:00 p.m. on February 8, 2008.
 

 ¶ 8. Officer David McConnell of the Forest Police Department was the first responder at the scene. Leffingwell directed Officer McConnell to Gore’s apartment. Officer McConnell found Jacqueline on Gore’s floor, and Gore was sitting on his couch. According to Officer McConnell, Gore admitted that he had shot Jacqueline. Gore also told Officer McConnell that he could find the rifle inside a closet. Officer McConnell found an “older-looking” single-shot bolt-action rifle inside a closet in Gore’s apartment. However, Officer McConnell did not collect the rifle.
 

 ¶ 9. Investigator Will Jones of the Forest Police Department responded to the Oakdale Apartments. By the time Investigator Jones arrived, emergency response personnel had removed Jacqueline’s body from Gore’s apartment. Officer McConnell directed Investigator Jones to the rifle in Gore’s closet. Investigator Jones opened the bolt and found a spent cartridge inside. Investigator Jones identified the rifle as being a .22-caliber single-shot bolt-action rifle.
 

 ¶ 10. Three days later, Investigator Jones and Forest Chief of Police Robert Roncalli met with Gore at the Forest Police Department. Gore was advised of his
 
 Miranda
 
 rights and subsequently executed a document indicating that Gore was aware of his rights and that he voluntarily waived them. Gore then gave the following statement, reproduced verbatim:
 

 On Thursday around when school was out, Jackie came to my house with Sonny. We sat around and drank beer. Then I cooked dinner. After we ate, we drank a little more. Around 8 or 9 Jackie left and went to the store. While she was at the store a guy named Freddie showed up and we drank some more. [Jacqueline] comes back from the store and we drank more beer. Around 12:30 or 1:00 [Jacqueline] and Freddie left and went back to the store. They stayed gone for a while. I waited until about 20 minutes to 4 and I went to her apartment to tell her to come get her son. When I got there I knocked on the door and she answered it. When she opened the door, she told me “we ain’t doing nothing [sic].” I told her to just come and get her child. I went back to my apartment. She came to get her child and she started arguing with me. She walked to the kitchen to get a knife. I then went to the closet and got this old gun out of it. I pointed it at her and hit the safety and the gun went off. When the gun went off I saw her fall and I threw the gun back in the closet and went for help. I went to [Wright]’s house and told her to call 911. On my way back to the apartment [Leffingwell] and Sonny came up and she asked me where did I shoot her. I told her “in the head[.”] We then went to the apartment and went inside[.] I told [Wright] not to touch her then she left. I was walking back out of the apartment when the police showed up and put handcuffs on me.
 

 ¶ 11. On August 5, 2008, a Scott County grand jury returned an indictment against Gore and charged him with murder. Gore went to trial on October 6, 2008. At trial, the prosecution called Wright, Leffingwell, Officer McConnell, and Investigator Jones, although not in that specific order. Wright and Leffingwell testified regarding the events that occurred during the early morning hours of February 8, 2008 — including statements that Gore had made. Officer McConnell testified as to his involvement. Investigator Jones testified as to his participation in the investigation. During Investigator Jones’s testimony, the prosecution introduced Gore’s statement.
 

 
 *665
 
 ¶ 12. Additionally, the prosecution called Dr. Steven Hayne, a forensic pathologist. Dr. Hayne testified that he had performed Jacqueline’s autopsy. Dr. Hayne testified that he found evidence of “medical intervention ... placed by medical personnel [including an] endotracheal tube in [Jacqueline’s] mouth, also the placement of catheters ... in an attempt to save” Jacqueline’s life. Dr. Hayne also found an “entrance gunshot wound” in Jacqueline’s right ear. Dr. Hayne testified that “there was powder residue immediately around the entrance gunshot wound and in the wound tract itself.” Dr. Hayne elaborated on the presence of powder residue in the wound as follows:
 

 The presence of powder residue in the wound would indicate to me that the weapon was in contact with [Jacqueline’s] ear when the weapon was fired. Powder will leave the muzzle of a weapon upon discharging the weapon, and the powder will travel down the barrel as well with the bullet, and in this case there was a distinct hole where the bullet entered the body, there was also powder residue immediately around the entrance gunshot wound and in the proximal, or the first part of the wound tract itself, indicating that the — the barrel of the weapon was — uh—in contact with [Jacqueline’s] right ear when the weapon was fired.
 

 During cross-examination, Gore’s attorney asked Dr. Hayne whether Jacqueline’s death could have been an accident. Dr. Hayne responded unequivocally, “[n]o, sir.”
 

 ¶ 13. Gore called two witnesses. Vonda Tullos testified that Gore had worked for her at her florist business for approximately twenty-five years. Tullos testified that she knew Gore to be “a good person” and that she “could trust him with anything.” Tullos also testified that Gore was “very trustworthy” and that she trusted him to work with any of the women that worked at her florist business. When asked on cross-examination whether she was testifying that Gore did not shoot Jacqueline, Tullos responded, “I wouldn’t think he would — it would — it wasn’t on purpose. It might have been an accident, but I — he’s never been anything like that toward us.” She later clarified that she “was not present” when Jacqueline was shot.
 

 ¶ 14. Gore’s second witness was Bonnie Williams. Williams testified that she lived at the Oakdale Apartments and that she and Gore “lived together for about — uh-— eleven years, and he never appeared to [her] as being violent in any way.” Williams also testified that Gore did not become violent when he drank. On cross-examination, Williams testified that she was not present when Jacqueline was shot, but she did not believe that Gore had shot Jacqueline. As previously mentioned, the jury found Gore guilty of murder. Gore appeals.
 

 ANALYSIS
 

 I. LESSER-INCLUDED-OFFENSE INSTRUCTION
 

 ¶ 15. Gore claims the circuit court erred when it denied the prosecution’s proffered lesser-included-offense instruction, designated as S-4, which states the following:
 

 The Court instructs the Jury that if you fail to find the defendant guilty of the felony crime of murder, then you should continue your deliberations to consider the elements of the felony crime of manslaughter.
 

 If you find from the evidence in this case beyond a reasonable doubt that the Defendant, Ray Thomas Gore, did kill Jacqueline Ford, a human being, without malice, in the heat of passion, but in a
 
 *666
 
 cruel or unusual manner, or by the use of a dangerous weapon not in necessary self-defense and without authority of law, then you shall find the Defendant guilty of manslaughter.
 

 The circuit court refused jury instruction S-4 finding that: “There’s absolutely no evidence of manslaughter in this case. The only evidence in this case is deliberate design or acts of misfortune. But there’s no — no evidence of manslaughter.” Gore claims the circuit court erred.
 

 ¶ 16. “A lesser-included-offense instruction should be granted if, in view of the evidence, a reasonable juror could find the defendant not guilty of the principal offense charged in the indictment yet guilty of the lesser[-]included offense.”
 
 Page v. State,
 
 989 So.2d 887, 892(¶23) (Miss.Ct.App.2007). “Conversely, only where the evidence could only justify a conviction of the principal charge should a lesser-included[-]offense instruction be refused.”
 
 Id.
 
 “However, ... the defendant must request an instruction on a lesser-included offense.”
 
 Berry v. State,
 
 980 So.2d 936, 943(¶ 31) (Miss.Ct.App.2007). “The trial judge shall not be put in error for his failure to instruct on any point of law unless specifically requested in writing to do so.”
 
 Id.
 
 (quoting
 
 Anderson v. State,
 
 904 So.2d 973, 977(¶ 5) (Miss.2004)). The prosecution, not Gore, submitted jury instruction S-4. Accordingly, we find that this issue is procedurally barred due to Gore’s failure to submit a lesser-included-offense instruction on manslaughter.
 

 II. CIRCUMSTANTIAL-EVIDENCE INSTRUCTION
 

 ¶ 17. Next, Gore claims the circuit court erred when it refused his proffered jury instruction designated as D-5. Instruction D-5 was a circumstantial-evidence instruction that reads as follows:
 

 The Court instructs the jury that if there is any fact or circumstance in this case susceptible to two interpretations, one favorable and the other unfavorable to the accused, that, when the jury has considered such fact or circumstance with all the other evidence, there is reasonable doubt as to the correct interpretation, the jury must resolve such doubt in the interpretation favorable to the accused.
 

 The prosecution objected to proffered jury instruction D-5 on the basis that it was not a circumstantial-evidence case. Gore’s attorney responded by arguing that: “there is direct evidence that my client had his hand on the gun when the bullet was — was fired — when the gun was fired[;] however, there is circumstantial evidence as to whether it was murder or self-defense or [an] act of misfortune. That part is circumstantial.” The circuit court refused the instruction and held: “Whenever there’s a confession, it’s not a circumstantial[-]evidence case.” Gore claims the circuit court erred.
 

 ¶ 18. “The rule in Mississippi is that a circumstantial[-]evidence instruction should be given only when the prosecution can produce neither eyewitnesses [nor] a confession to the offense charged.”
 
 Stringfellow v. State,
 
 595 So.2d 1320, 1322 (Miss.1992). Additionally, a case may not be characterized as purely circumstantial where a defendant “made an admission on a significant element of the offense and the alleged admission constitutes direct evidence.”
 
 Lynch v. State,
 
 877 So.2d 1254, 1264(¶ 21) (Miss.2004) (internal quotations omitted). “An admission is but a statement by the accused which may be direct or implied by facts pertinent to the issue and tending to prove his guilt.”
 
 Id.
 
 at 1266(¶ 27).
 

 ¶ 19. In Gore’s official statement, he stated that: “[Jacqueline] walked to the kitchen to get a knife. I then went to the
 
 *667
 
 closet and got this old gun out of it. I pointed it at her and hit the safety and the gun went off.” Wright testified that, on the night of Jacqueline’s death, Gore told her to “[e]all 911 because I done [sic] shot Jackie.” LefSngwell testified that Gore said that Jacqueline was dead, and Gore further stated that: “I killed her. I shot her.” By admitting that he had killed Jacqueline, Gore admitted that he committed a significant element of murder. The Mississippi Supreme Court has held that where “the only element proven entirely by circumstantial evidence was that of intent. ... it was proper to refuse [a] request for a circumstantial[-]evidence instruction.”
 
 Williams v. State,
 
 445 So.2d 798, 808 (Miss.1984). That is precisely what occurred in this case. Accordingly, we find no error in the circuit court’s refusal to give Gore’s proffered circumstantial-evidence instruction.
 

 ¶ 20. THE JUDGMENT OF THE SCOTT COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO SCOTT COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, CARLTON AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . Trial testimony indicated that, although Gore was not Sonny’s father, it was not unusual for Jacqueline to leave Sonny with Gore.