# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-01240-COA

QUINTON STRONG                                                                APPELLANT

v.

ACARA SOLUTIONS, INC.                                                        APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 11/23/2022 |
| TRIAL JUDGE: | HON. CELESTE EMBREY WILSON |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | RAYNETRA LASHELL GUSTAVIS |
| | ROGEN K. CHHABRA |
| ATTORNEYS FOR APPELLEE: | WILTON V. BYARS III |
| | MARY CHANDLER COSSAR |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 12/12/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., GREENLEE AND McCARTY, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1.    A man filed for bankruptcy. Although he listed a pending workers' compensation claim on his petition, he did not disclose a related personal injury case. When he later filed that personal injury lawsuit, the defendant argued he was judicially estopped due to the failure to disclose. Finding that all three elements of judicial estoppel were met, the trial court dismissed the man's lawsuit with prejudice.

¶2.    On appeal, the man claims that the elements of judicial estoppel were not met. Finding that the trial court did not have the benefit of a recent decision from the Mississippi Supreme Court on the proper test to apply, we reverse and remand.

## FACTS

¶3.    The facts relevant to this appeal are generally uncontested.  Quinton Strong was employed at Siemens Industry as a warehouse operator.  On May 28, 2018, just eight days after beginning work, Strong was allegedly injured by a forklift that was operated by another employee.  The employee was believed to work for Acara Solutions Inc., formerly known as Superior Staffing Inc.

¶4.    About seven months later, Strong voluntarily filed for Chapter 13 bankruptcy on January 2, 2019.  That same day, he also filed a claim with the Mississippi Workers' Compensation Commission against Siemens Industry for the injuries he claimed to have suffered from the 2018 incident.  The attorney representing Strong's bankruptcy action was different from the one representing his workers' compensation claim.

¶5.    On January 22, 2019, Strong filed his summary of assets and liabilities schedule along with his proposed Chapter 13 plan.  In one category, Strong was required to disclose whether he had any "[c]laims against third parties, whether or not you have filed a lawsuit or made a demand for payment."  The examples given under this question were "[a]ccidents, employment disputes, insurance claims, or rights to sue."  Strong responded to the question by marking "No," indicating that he did not have any claims against third parties.

¶6.    Strong was also required to disclose "[o]ther contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims."  In response, Strong marked "Yes," disclosing he had a "[p]ending Worker's Comp claim for work related injury against employer and employers worker's comp insurance carrier."

¶7.    Following the filing of Strong's bankruptcy schedules, the bankruptcy trustee

2

conducted the meeting of creditors in the bankruptcy action on February 26, 2019. During the meeting, Strong was asked the following:

> Trustee: Did you list all of your assets and all of your creditors?
>
> Strong: Yes, except I think I forgot one.
>
> Trustee: Who did you forget?
>
> . . . .
>
> Strong: Continental Financial.
>
> . . . .
>
> Trustee: Are you currently involved in any type of lawsuit or class action?
>
> Strong: Uh, worker's comp, but I mean . . . .
>
> Trustee: Okay. Other than that, anything else?
>
> Strong: No, uh, no.
>
> Trustee: Is that purely just worker's comp claim?
>
> Strong: Yes, just worker's comp claim.

¶8. On April 8, 2019, Strong's bankruptcy attorney filed an amended Chapter 13 plan on his behalf. Seventeen days later, on April 25, 2019, Strong's instant counsel notified his bankruptcy attorney of Strong's "ongoing workers' compensation case and potential 3rd party case." Strong's instant counsel "also provided [his bankruptcy attorney] with copies of Mr. Strong's workers' compensation case and personal injury contracts." Notably, Strong's bankruptcy attorney never updated the bankruptcy schedule to include the potential personal injury claim.

¶9. On December 19, 2019, the bankruptcy trustee filed a motion to dismiss the bankruptcy case for Strong's failure to make payments under his Chapter 13 plan. The bankruptcy court ultimately granted the motion and dismissed the case on March 4, 2020. Strong's bankruptcy case was officially closed on May 7, 2020.

## PROCEDURAL HISTORY

¶10. On May 26, 2021, Strong filed his initial complaint against Superior Staffing for the workplace incident that allegedly occurred in 2018. He then filed his first amended complaint on June 16, 2021. After learning Acara Solutions Inc.—formerly known as Superior Staffing—was the employer of the forklift operator, Strong filed a second amended complaint on July 1, 2021.

¶11. Acara filed a motion for summary judgment on July 28, 2022, along with a memorandum in support. Acara asserted that "it is undisputed that [Strong] failed to disclose this personal injury action in his previous bankruptcy litigation and failed to disclose his bankruptcy in this current litigation." As such, Acara claimed that "no genuine issue of material fact" existed and that Strong "should be judicially estopped from pursuing this claim."

¶12. A hearing to address Acara's motion for summary judgment was held on November 17, 2022. After hearing arguments from both sides, the circuit court decided to "take a stab at articulating an order from the bench." Citing prior caselaw, the circuit court found the first requirement of judicial estoppel was satisfied because "no formal disclosure of the personal injury suit was made . . . in the bankruptcy."

4

¶13. Having found Strong's argument as to the second element of judicial estoppel to be "without any merit," the circuit court found the second prong of judicial estoppel was met because "when the bankruptcy court entered an order discharging the plaintiff from bankruptcy, the Court effectively accepted the representations that the plaintiff made full and complete disclosure of their assets." The circuit court also noted that a court can "accept representations by confirming a repayment plan . . . ."

¶14. Noting that "there's no doubt that the plaintiff knew of the potential claim," as "it was his responsibility to make those disclosures," the circuit court found the third element of judicial estoppel was met. Additionally, the circuit court found there was "a motive for concealment because of the potential financial benefit of not disclosing."

¶15. On November 23, 2022, the circuit court entered the order granting Acara's motion for summary judgment, noting it was the only defendant that appeared. The circuit court also dismissed Strong's complaint with prejudice. Aggrieved, Strong appeals.

## DISCUSSION

¶16. On appeal, Strong attacks the finding of judicial estoppel in three ways, generally arguing that the "elements of judicial estoppel are not met." But before addressing his argument, we note that the Supreme Court recently refined the test used by a trial court in assessing when judicial estoppel applies. And this clarification came only three weeks after the trial court ruling in Strong's case.

¶17. The hearing on Acara's motion for summary judgment was held on November 17, 2022, and the trial court's order finding judicial estoppel was entered on November 23. On

5

December 15, 2022, the Supreme Court "clarified that the application of judicial estoppel is a fact-specific inquiry that must take into account the totality of the circumstances—including how the bankruptcy court has dealt with the omission." *Saunders v. Nat'l Collegiate Athletic Ass'n*, 352 So. 3d 618, 621 (¶3) (Miss. 2022).

¶18. Saunders worked stints at both the University of Mississippi and University of Louisiana in various capacities, his "career centered on college football." *Id.* at (¶5). The NCAA believed he had committed rule violations while at both schools and investigated him and assessed sanctions. *Id.* at (¶6).

¶19. In 2017, "Saunders and his attorney discussed suing the NCAA," but he "did not pursue a lawsuit" due to concerns about cost. *Id.* at 621-22 (¶8). Just "[t]hree months later . . . Saunders filed a voluntary petition for Chapter 7 bankruptcy," and "averred in his bankruptcy petition that he had no claims against third parties." *Id.* at 622 (¶9). Even after an amendment, "he did not identify any potential claim against the NCAA," and the discharge was granted in July of 2018. *Id.*

¶20. About two years later, Saunders sued the NCAA. *Id.* Like Acara in this case, the organization filed a motion for summary judgment, arguing the "claims were barred by the doctrine of judicial estoppel because Saunders had not disclosed these claims against the NCAA in his 2018 bankruptcy proceedings." *Id.* at (¶11). The trial court found judicial estoppel applied and dismissed the lawsuit with prejudice. *Id.* at 622-23 (¶14).

¶21. In reviewing the grant of summary judgment, the Court set out that "[j]udicial estoppel has three elements—an asserted legal position inconsistent with one previously taken during

litigation, a court's acceptance of that previous position, and no inadvertence in taking the inconsistent position." *Id.* at 624 (¶24). "[T]he first two requirements are not at issue," with "[t]he sole question is whether the nondisclosure of his monetary claims to the bankruptcy court was *inadvertent*." *Id.* (emphasis in original).

¶22.    The Court saw the trial court as determining that "because Saunders had knowledge of the facts giving rise to the later-filed claims against the NCAA, he had knowledge of the claims themselves," and since he "did not disclose them on his bankruptcy schedule, the trial court declared Saunders's motive to conceal these claims from the bankruptcy estate to be 'self-evident.'" *Id*. at 624 (¶25).

¶23.    But this went too far, as the Court had "recently rejected" the idea that "non-inadvertence required for judicial estoppel to apply can be merely inferred or presumed," even though a line of cases from state and federal courts had allowed that interpretation. *Id.* at 625 (¶26).

¶24.    This rejection had come via a special concurrence to a recent judicial estoppel case—one in which a separate opinion had been joined by a majority of the justices. *Id*. at (¶27); *see Jones v. Alcorn State Univ.*, 337 So. 3d 1062, 1076 (¶¶55-56) (Miss. 2022) (Maxwell, J., specially concurring, joined by Randolph, C.J., Coleman, Beam and Chamberlin, JJ. Griffis, J., joined this opinion in part).[1]

---

[1] Since the separate opinion garnered a majority of the nine justices voting on the case, it has precedential value. *See Buffington v. State*, 824 So. 2d 576, 580 (¶15) (Miss. 2002) ("[A] majority of all sitting judges is required to create precedent"); *Dean v. State*, 173 Miss. 254, 162 So. 155, 157 (1935) (holding that "no action can be taken by [the Supreme Court] unless a majority of the judges present concur therein").

¶25. The crux of the special concurrence was that "a court may not mechanically infer bad motive in every circumstance where a debtor does not disclose a claim on his bankruptcy schedule." *Id*. at 1076 (¶55) (Maxwell, J., specially concurring). "In this respect, in Mississippi, we have too narrowly cited [federal] precedent to suggest that anytime a debtor omits a claim or potential claim from his or her schedule, it must be for nefarious reasons, and judicial estoppel should be applied—with no further questions from the court." *Id.* (Maxwell, J., specially concurring).

¶26. Summing up this position in *Saunders*, the Court determined, "[A] majority of this court agreed that, rather than rely on inferences, trial courts should consider the specific facts and circumstances to determine if judicial estoppel applies." 352 So. 3d at 625 (¶27). Given the precedential value granted by the special concurrence in *Jones*, it "undisputedly snuffed out the presumption-based judicial estoppel method, giving much needed clarification to our bench and bar that the application of judicial estoppel *must* be facts-and-circumstances based—not merely presumption based." *Id*. at 626 (¶31) (emphasis in original).

¶27. As the trial court had ruled before the test shifted away from the prior "presumption-based judicial estoppel method," the Supreme Court reversed the grant of summary judgment and remanded. *Id.* at (¶¶31-32). Importantly, the Court held that "instead of strictly applying presumptions, courts better promote the equitable principles of judicial estoppel by applying caution and considering whether the particular circumstances warrant judicial estoppel." *Id.* at 625 (¶28). Over a heated dissent, the majority in *Saunders* held that this "much needed clarification" of judicial estoppel warranted a reversal since "the trial judge did not have the

8

benefit of our *Jones* decision." *Id.* at 626 (¶31).

¶28.    We find the same approach should be taken here.  The *Saunders* decision was issued by the Supreme Court on December 15, 2022.  Acara filed its motion for summary judgment months before—in July 2022—and Strong responded in August.  The trial court granted summary judgment on the basis of estoppel on November 23, about three weeks before the decision in *Saunders*.

¶29.    While the parties discussed the merits of the *Jones* decision in their briefs before the trial court, with Acara especially relying on the majority in its argument, the modification of the prevailing test as announced by the special concurrence was not addressed.  And since *Saunders* was not issued until after the trial court ruled, of course the test was not addressed by the trial court or the parties.  Nor did the trial court and the parties have the benefit of the majority in *Saunders* clarifying the Supreme Court had "undisputedly snuffed out the presumption-based judicial estoppel method, giving much needed clarification to our bench and bar that the application of judicial estoppel *must* be facts-and-circumstances based—not merely presumption based." *Id*. at 626 (¶31) (emphasis in original).

¶30.    Furthermore, while the order as entered was silent on this point, the trial court's ruling from the bench indicates the now-overruled "presumption based" model was applied.  From the bench, the trial court told the parties, "[T]here's no doubt that the plaintiff knew of the potential claim," as "it was his responsibility to make those disclosures[.]"  The trial court viewed this as "a motive for concealment because of the potential financial benefit of not disclosing."  This ruling then echoes the very concern expressed by Justice Maxwell in his

special concurrence in *Jones* that "a court may not mechanically infer bad motive in every circumstance where a debtor does not disclose a claim on his bankruptcy schedule." *Jones*, 337 So. 3d at 1076 (¶55) (Maxwell, J., specially concurring).

¶31. Given the change in the law was made clear only three weeks after the trial court issued its ruling, we find this case should be reversed and remanded for the trial court to apply the clarified test announced in *Saunders*, which held that "instead of strictly applying presumptions, courts better promote the equitable principles of judicial estoppel by applying caution and considering whether the particular circumstances warrant judicial estoppel." *Saunders*, 352 So. 3d at 625 (¶28).

¶32. Reversal and remand is in accord with *Saunders* itself, which reversed in part to apply the clarified test, as well as other cases from our appellate courts that have reversed and remanded when there is intervening law issued after a trial court has ruled. *See Est. of Hudson v. Yazoo City*, 246 So. 3d 872, 880 (¶51) (Miss. 2018) (reversing and remanding when MTCA precedent changed while case was pending, and holding "out of fairness to the Estate, we find the Estate should be allowed the opportunity to fully present its negligence claim, beyond its reliance on the overruled *Brantley* test"); *Reverie Boutique LLC v. City of Waynesboro*, 282 So. 3d 1273, 1277 (¶24) (Miss. Ct. App. 2019) (reversing and remanding MTCA case when "the trial court granted summary judgment on July 2, a little more than a month after the Supreme Court overruled the *Brantley* line of cases," and had not applied the revised precedent).

¶33. For this reason, we reverse the grant of summary judgment based on a finding of

judicial estoppel and remand for proceedings consistent with *Saunders* and the special concurrence of *Jones*.

## CONCLUSION

¶34. The trial court's judgment is reversed, and this case is remanded for further proceedings consistent with this opinion.

¶35. **REVERSED AND REMANDED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR.**